ELMER ET AL., APPELLANTS, *v.* LUCAS COUNTY CHILDREN SERVICES BOARD, APPELLEE.

242

(No. L-87-158 — Decided
December 18, 1987.)

*Mary Brogan,* for appellants.
*Bruce D. McLaughlin,* for appellee.

RESNICK, J. This is an appeal from the Lucas County Court of Common Pleas, Juvenile Division, whereby the court granted permanent custody of the minor child, Jennifer Elmer, to the Lucas County Children Services Board (hereinafter "LCCSB").

Appellants filed a timely notice of appeal asserting the following assignments of error:

"I. The trial court erred in changing its order granting temporary custody of a dependent child to that of permanent custody without ordering LCCSB to formulate a unification plan.

"II. The trial court erred in failing to conduct custody proceedings in bifurcated stages, thus violating appellants' due process rights.

"III. The judgment of the trial court was against the manifest weight of the evidence. Permanent custody was granted on evidence that failed to rise to the standard of clear and convincing."

Jennifer Elmer was born on March 31, 1986 to appellants, Georgalina Elmer and James Porter. After the birth of Jennifer, Georgalina and Jennifer returned to the Florence Crittenton Home for enrollment in a program which provided training in parenting to young teenage mothers. Georgalina was in the temporary custody of LCCSB and had been placed in the Florence Crittenton Home for prenatal care and training two months prior to the birth of Jennifer.

On April 22, 1986, LCCSB filed a complaint in the Lucas County Court of Common Pleas, Juvenile Division. LCCSB had received a referral from the Crittenton staff regarding Georgalina's inability and/or refusal to take care of Jennifer's needs, and her lack of responsibility toward the child.

An emergency detention hearing was held before referee John Yerman on the day the complaint was filed. LCCSB was awarded emergency temporary custody of Jennifer for placement and planning pending adjudication. Jennifer returned with her mother to the Crittenton Home. However, Georgalina's behavior did not change and it became necessary to place Jennifer in an agency foster home. Georgalina Elmer left the program at Crittenton Home and returned to her mother's home on or about April 29, 1986.

Thereafter, on May 2, 1986, LCCSB filed an amended complaint in dependency requesting permanent custody of Jennifer. On September 16, 1986, a hearing was held for the purposes of adjudication only on the dependency/permanent custody complaint. Apparently, the parties reached an agreement on the adjudication of dependency. As a result of the hearing, LCCSB's temporary custody of Georgalina Elmer was terminated and, by agreement, Jennifer was found to be a dependent child. In addition, temporary custody was continued in LCCSB for purposes of placement and planning pending disposition.

On November 24 and 25, 1986,

another hearing was held. The report and recommendaton of the referee and the judgment entry which was filed on January 12, 1987 terminated the parental rights of Georgalina Elmer and James Porter and awarded permanent custody of Jennifer to LCCSB. Appellants filed objections that were heard and overruled by the court in a judgment entry file-stamped April 17, 1987.

For their first assignment of error, appellants argue that because a "Comprehensive Reunification Plan" was not ordered, the order for permanent custody should be vacated and the temporary order should be reinstated.

Appellants maintain that R.C. 2151.414 requires a "good faith effort" to implement the required reunification plan and that the minimum duration of such a reunification plan is six months pursuant to R.C. 2151.413.

The issue of whether permanent custody may be granted without the implementation of a comprehensive reunification plan has already been addressed by this court. In *In re Catlett* (Sept. 17, 1982), Lucas App. No. L-82-117, unreported, at 13, this court held that:

"When R.C. 2151.353(A)(4) is read in pari materia with the related sections of 2151.412 and 2151.414, it becomes obvious that the state legislature envisioned circumstances under which the submission of a reunification plan by the children services board would not be necessary."

See, also, *In re Baby Girl Baxter* (1985), 17 Ohio St. 3d 229, 17 OBR 469, 479 N.E. 2d 257, paragraph two of the syllabus, where it was held that "R.C. 2151.412 does not require a juvenile court to order a reunification plan when it makes a dispositional order pursuant to R.C. 2151.353(A)(4)." Accord *In re Moloney* (1986), 24 Ohio St. 3d 22, 25-26, 24 OBR 18, 21-22, 492 N.E. 2d 805, 808.

R.C. 2151.353(A)(4) reads, in pertinent part:

"(A) If the child is adjudged an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

"* * *

"(4) Commit the child to the permanent custody of the county department of human services which has assumed the administration of child welfare, county children services board, or to any other certified organization, if the court determines that the parents have acted in such a manner that the child is a child without adequate parental care, it is likely that the parents would continue to act in such a manner that the child will continue to be a child without adequate parental care if a reunification plan were prepared pursuant to section 2151.412 of the Revised Code, and the permanent commitment is in the best interests of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding."

Pursuant to this section, "* * * if the state proves the existence of the three grounds stated [in R.C. 2151.353(A)(4)], then a court may commit the child to the permanent custody of the board etc., *without a reunification plan ever having been submitted. * * *"* (Emphasis *sic.*) *Catlett, supra,* at 13.

In the instant case, appellee filed its amended complaint for permanent custody on May 2, 1986, pursuant to R.C. 2151.353(A)(4). Juv. R. 22(B) provides, in part, that "[a]ny pleading may be amended at any time prior to the adjudicatory hearing. * * *" Appellee's complaint was amended well in advance of the adjudicatory hearing. Furthermore, the judgment entry filed on July 22, 1986 states that LCCSB's "* * * temporary custody of Jennifer

for purposes of placement and planning *pending adjudication* is hereby affirmed." (Emphasis added.) At this time, Jennifer Elmer had not been adjudged an "abused, neglected, or dependent child" and, therefore, R.C. 2151.412 is inapplicable. We also conclude that R.C. 2151.414 does not apply.[1] Cf. *In re Jones* (1985), 29 Ohio App. 3d 176, 29 OBR 206, 504 N.E. 2d 719.

Additionally, it should be noted that there is no need to implement a reunification plan when it would be futile. *In re Smart* (1984), 21 Ohio App. 3d 31, 35, 21 OBR 33, 37, 486 N.E. 2d 147, 151. James Porter, the father, has suffered from mental illness all of his adult life. Dr. Wayne J. Graves, a clinical psychologist, diagnosed him as a "* * * paranoid schizophrenic in remission, but chronic." When asked whether this form of illness would have any impact on James' ability to parent a young child, Dr. Graves testified that it would:

"Q. In what way?

"A. If he becomes psychotic, and I am guessing — I am saying when he becomes paranoid, because that is a high possibility — he would lose the ability to think of others and in any adult, rational fashion. He would lose the ability to make rational judgments for himself or any other person, including his child. He would act in a way that was either grandiose or potentially dangerous to himself or to others around him."

Dr. Graves further testified that Georgalina operates in the mildly retarded intellectual range. He stated that she had difficulty generating solutions to problems. He also stated that he doubted James and Georgalina would be able to stay together for any length of time.

Leigh Papin, a social worker with Toledo Crittenton Services, testified that, while at the Florence Crittenton Home, Georgalina tended to put her own needs before those of her baby. She stated that, in her opinion, further training would not help Georgalina develop better parenting skills.

Based on this testimony, we conclude that an effort to reunite Jennifer with her parents would be futile in that adequate parental care was not present and would not be available to the child in the future.

Accordingly, we find appellants' first assignment of error not well-taken.

For their second and third assignments of error, appellants argue that the trial court erred in failing to conduct permanent custody proceedings in bifurcated stages and that permanent custody was granted to LCCSB on evidence that was less than clear and convincing. We agree.

Juv. R. 29 and 34 apply to this case and set forth the procedure that is to be followed during the adjudicatory and dispositional hearings. Juv. R. 29(E)(4) provides that in dependency, neglect, and child abuse proceedings, the issues must be determined by clear and convincing evidence. See, also, *Santosky* v. *Kramer* (1982), 455 U.S. 745. Generally, "[w]hen proceeding under R.C. 2151.353(A)(4), the court must find by clear and convincing

---

[1] Although R.C. 2151.414(A)(1) and (2)(a) refer to the necessity of a hearing to determine whether a good faith effort was made to implement the reunification plan and whether the parents have conformed to such plan, this mandate is limited to reunification plans devised pursuant to R.C. 2151.412. As stated above, R.C. 2151.412 is inapplicable to the case *sub judice*. Furthermore, R.C. 2151.414 refers to the filing of a motion for permanent custody and not the filing of a complaint for permanent custody.

evidence that the behavior of the parents [has] created an environment which is having an adverse impact on the child and that such environment will continue." *In re Bondsteel* (Feb. 14, 1986), Williams App. No. WMS-85-11, unreported, at 3-4. *In re Baby Girl Baxter, supra,* at 233, 17 OBR at 472, 479 N.E. 2d at 260, provides that "* * * [t]he issue at the dispositional stage involves a determination of what is in the child's best interests. * * *"

In this case it was only after the court found Jennifer to be neglected by clear and convincing evidence that it had the authority to make a disposition pursuant to R.C. 2151.353. However, there is no evidence before this court to indicate what occurred at the adjudicatory phase of the proceedings which took place September 16, 1986.

The judgment entry dated September 29, 1986 states that, "[b]y agreement, Jennifer is found to be a dependent child. * * *" There are also three facts set forth which, allegedly, were used to support the agreement.[2] However, these facts are wholly conclusory in and of themselves.

It should be noted at this point that, although a full-blown adjudicatory hearing is not mandatory under Juv. R. 29, there are certain requirements which must be met in waiving that right. Juv. R. 29(D) provides:

"(D) Initial procedure upon entry of an admission. The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining that:

"(1) He is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission; and

"(2) He understands that by entering his admission he is waiving his rights to challenge the witnesses and evidence against him, to remain silent and to introduce evidence at the adjudicatory hearing.

"The court may hear testimony, review documents, or make further inquiry, as it deems appropriate, or it may proceed directly to the action required by subdivision (F)."

The record before us is devoid of any showing that these provisions were complied with. In a case where parental rights are permanently terminated, it is of utmost importance that the parties fully understand their rights and that any waiver is made with full knowledge of those rights and the consequences which will follow.

It further appears that, although Jennifer had already been found to be dependent in September 1986, the trial court again concluded after the hearing held November 24 and 25, 1986 that Jennifer was a dependent child. The trial court also concluded that dependency had been shown by clear

---

[2] The referee's report states in pertinent part:

"2. Today's hearing was also for the purposes of adjudication only on the dependency—PC complaint. Parties reached agreement on the adjudication of dependency, based on the following facts:

"a) The mother of this child, Gerogalina [*sic*] Elmer, is a minor and currently in the temporary custody of the Lucas County Children Services Board and in residence at the Florence Crittenton Home.

"b) Florence Crittenton staff reports that Georgalina seems to lack impulse control and is immature. They have found Jennifer unattended after being placed in Georgalina's care and, on occasion, Georgalina has become upset and told Crittenton staff that she would not take care of the child. Georgalina has also threatened to leave with Jennifer. Georgalina denies the foregoing.

"c) James Porter has a history of psychological problems and has been incarcerated and institutionalized for approximately the last six (6) months."

and convincing evidence, that neither Georgalina nor James was capable of providing adequate parental care and that Jennifer would continue to be a child without adequate parental care.

The hearing held on November 24 and 25 was a single evidentiary hearing that may be construed to have covered both the adjudication and disposition of Jennifer Elmer. In *In re Baby Girl Baxter, supra,* at 233, 17 OBR at 472, 479 N.E. 2d at 260, the Ohio Supreme Court stated: "[t]he law commands that the proceedings be bifurcated into separate adjudicatory and dispositional hearings because the issues raised and the procedures used at each hearing differ. * * *" Furthermore, Juv. R. 34(A) states that "[t]he dispositional hearing may be held immediately following the adjudicatory hearing or at a later time fixed by the court. * * *" Therefore, if the November 24 and 25 hearing was held for the purposes of adjudication *and* disposition, there should have been two separate phases of the hearing in order to accommodate the different standards of proof; that is, the clear and convincing standard for the dependency finding and the best interest standard for the dispositional phase. We conclude that the proceeding was not bifurcated in the instant case.

Appellee argues that the adjudication took place September 16, 1986, that the November hearing covered only disposition and, therefore, the bifurcation requirement was complied with. Indeed, the September 29, 1986 referee's report states that the "* * * hearing was * * * for the purposes of adjudication only on the dependency—PC complaint * * *" and the judgment of the same date states that temporary custody was to be granted to LCCSB "* * * for purposes of place-

ment and planning *pending* disposition." (Emphasis added.)

Appellee, in its brief, relies upon certain statements made at the emergency detention hearing and the hearing held November 24 and 25, 1986. However, the court cannot refer to statements made at the detention hearing to determine whether parental rights should be terminated. *In re Koles* (Sept. 18, 1987), Lucas App. No. L-87-052, unreported, at 6. Furthermore, although clear and convincing evidence was presented at the later hearing, the issue of dependency had already been decided per judgment entry dated September 29, 1986.[3]

We conclude that the court below did not follow proper procedure in handling this matter. A finding of dependency should have been made only upon the presentation of clear and convincing evidence. However, if the parties agree to waive such a hearing and stipulate to certain facts, then Juv. R. 29(D) must be fully complied with and the facts set forth in the record must sufficiently support a finding of dependency. Such cannot be inferred from a silent record.

If a hearing is held which is to cover both the adjudicatory and dispositional phases of the proceeding, the court must bifurcate the proceedings into two distinct phases in order to accommodate the different standards of proof.

Accordingly, we must find appellants' second and third assignments of error to be well-taken due to the procedural defects in the proceedings below. However, it is with utmost reluctance that we do so, given the facts of this particular case.

Since the evidence at the November 24 and 25 hearing clearly established that it was in the best interests

---

[3] Even if the issue of dependency was not decided until the November 1986 hearing, we would still come to the same conclusion since that hearing was not bifurcated.

of the child to grant permanent custody to LCCSB, if proper procedure had been followed, the judgment of the lower court would be affirmed; therefore, temporary custody is continued in LCCSB.

On consideration whereof, the court finds that substantial justice has not been done the parties complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is reversed. This case is remanded to that court and it is hereby ordered that LCCSB retain temporary custody of Jennifer Elmer pending adjudication and disposition hearings. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed and cause remanded.*

GLASSER and CONNORS, JJ., concur.