### In the Matter of Cannon
*[Cite as 8 AOA 220]*

*Case No. CA-8232*
*Stark County, (5th)*
*Decided December 31, 1990*

*John M. Willis, Stark County Public Defender, 306 Market Ave. N., Canton, Ohio 44702, for appellant.*

*Robert Horowitz, Prosecuting Attorney, Stark County Courthouse, Canton, Ohio 44702, for appellee.*

MILLIGAN, J.

This is an appeal from an order of the Stark County Common Pleas Court, Juvenile Division, granting permanent custody of Dennis Cannon to the Department of Human Services (DHS). The mother appeals, assigning as error:

ASSIGNMENT OF ERROR
THE APPELLANT WAS DEPRIVED OF HER RIGHTS TO DUE PROCESS AND EQUAL PROTECTION UNDER THE OHIO AND UNITED STATES CONSTITUTION BY TERMINATING HER PARENTAL RIGHTS WITHOUT OFFERING HER SERVICES SPECIFICALLY TAILORED TO TAKE INTO ACCOUNT HER MENTAL RETARDATION TO ENABLE HER TO BECOME AN ADEQUATE PARENT.

Dennis Cannon was born on April 2, 1990, in front of Timken Vocational High School in Canton. The child and his mother were taken to the hospital. On April 5, 1990, DHS filed a complaint alleging that Dennis was a dependent child due to his mother's lack of suitable housing. This complaint requested the DHS be given permanent custody of Dennis. The complaint was later amended to include the mother's lack of parenting skills. Mother stipulated to the child's dependency. On June 18, 1990, DHS was granted permanent custody of Dennis.

DHS had received permanent custody of mother's two other children, the latter in March of 1990. Mother has been under psychiatric care for mild mental retardation and a dependent personality disorder. She has a tested mental age of twelve, and her scores on tests measuring common sense and judgment suggest Significant limitations in these areas.

A comprehensive reunification plan filed with regard to an earlier child removed from the mother in March of 1990 concentrated on teaching her to take care of herself. She was referred to programs with Family Counseling and Goodwill designed to teach her to care for herself; she attended sporadically, and was eventually discharged due to lack of interest. She made no significant progress in an infant stimulation program. She also made no significant progress in case-work counseling as to housekeeping skills, eating balanced meals, handling a baby, and appropriately feeding a baby. Mother was never referred to or involved in parenting classes specifically designed for the mentally retarded.

This court has previously held that R.C. 2151.414, authorizing permanent termination of parental rights under certain circumstances, is not *per se* unconstitutional when applied to retarded parents. *In the Matter of: Joshua Norton, A Dependent Child* (Nov. 26, 1990), Stark App. No. CA-8185, unreported. In this case, we address a claim that the statute was unconstitutionally applied to this mentally retarded mother.

*Due Process*

Mother argues that the termination of her parental rights in this case violated her

rights to due process of law found in the Fourteenth Amendment to the United States Constitution and Article I, Section 16, of the Ohio Constitution.

While the right to be a parent is a fundamental right, this right may be terminated upon a showing by clear and convincing evidence of the necessity for termination, in accordance with state statute. *Santosky v. Kramer* (1982), 455 U.S. 745; *In Re: Schmidt* (1986), 25 Ohio St.3d 331, 496 N.E.2d 952. Mother argues that unless she has been offered services tailored to mentally retarded parents, and shown by clear and convincing evidence to have failed at such programs, her parental rights may not constitutionally be terminated.

There is no need to implement a reunification plan when such an attempt would be futile. *Elmer v. Lucas County Children Services Board* (1987), 36 Ohio App.3d 241, 244, 523 N.E.2d 540, 543. A short time before the birth of this child, mother was offered services to help her, as a mentally retarded person, take care of herself. It would have been futile to provide the mother with special services to help her to take care of a child when she failed at programs designed to teach her to take care of herself. Given the evidence of her failure at such efforts, the termination of her parental rights complied with due process as mandated by the United States and Ohio Constitutions.

### Equal Protection

Mother argues that the termination of her parental rights without providing her the services geared for mentally retarded parents violated the equal protection clause of the Fourteenth Amendment to the United States Constitution.

Under the equal protection clause, the mentally retarded are not a suspect or a quasi-suspect class. *City of Cleburne v. Cleburne Living Center* (1985), 473 U.S. 432, 442. Therefore, any state action treating the mentally retarded differently must be rationally related to a legitimate government purpose. *Id.*, at 446.

Mother argues that because she is mentally retarded, the state is required to treat her differently than other parents. She argues that the state lacks a rational basis for treating mentally retarded parents the same as others, by not offering special services.

Mother's argument is inverted. Mother was patently granted equal protection in this case: she was treated the same as other parents. If the legislature would choose to treat mentally retarded parents differently than others when considering terminating parental rights, such a law would be subject to examination for compliance with equal protection under the "rational basis test."[1]

The assignment of error is overruled.

The judgment of the Stark County Common Pleas Court, Juvenile Division, is affirmed.

PUTMAN, P.J., AND GWIN, J., concur.

---

[1] Mother's reliance on *Penry v. Lynaugh* (1989), 109 S.Ct. 2934, is misplaced. *Penry*, requiring mental retardation to be considered as a mitigating factor in determining whether to impose capital punishment, was decided under the Eighth Amendment's ban on cruel and unusual punishment. Eighth Amendment analysis is different than equal protection analysis.