OPINION
Appellant, Alicia Fordyce, nka Willis, appeals an order of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her two children to the Butler County Children Services Board ("BCCSB").
On January 23, 1995, appellant's four-month-old daughter, Kara Fordyce, was hospitalized at Middletown Regional Hospital due to a "failure to thrive" condition resulting from her failure to gain weight. Kara had gained only two and one-half ounces between two and four months of age and had trouble keeping her food down. Kara remained in the hospital for approximately two days, during which time she gained approximately one pound.[1] During Kara's hospitalization, Kara underwent numerous tests and her doctors discovered that she had developmental delays, approximately twelve bone fractures that were in the healing stages, a recent skull fracture, and retinal hemorrhages and subdural hematomas which are symptomatic of "shaken baby syndrome." Kara's physicians notified the authorities of their findings and on January 25, 1995, BCCSB removed Kara from parental care.
On July 27, 1995, BCCSB filed a complaint alleging that Kara was a neglected, abused, and dependent child and that her sister, Asia Fordyce, who was three and one-half years old at the time, was dependent and abused. Kara and Asia had been residing with appellant and her husband, Scott Fordyce, since their respective births. The trial court granted temporary custody of both children to BCCSB.
At the time the children were removed from the Fordyce home, Middletown Police Department detectives observed that the home was unsanitary in that there were animal feces on the floor, clothing strewn around the home, very little food in the cupboards, and no refrigerator in the home. Scott was subsequently convicted of felonious assault and child endangering and appellant was subsequently convicted of misdemeanor child endangering in connection with the removal of Kara and Asia from their home.
On January 10, 1996, an uncontested adjudicatory hearing was held at which time appellant agreed that Kara was an abused, neglected, and dependent child and that Asia was a dependent and abused child.[2] BCCSB sought permanent custody of the children and a dispositional hearing was held on August 13 and 14, 1996. On September 16, 1996, the trial court filed a final judgment entry finding that the children could not be placed with either parent within a reasonable time and should not be placed with either parent, and that it was in the children's best interest for permanent custody to be awarded to BCCSB. The court also terminated the parental rights of appellant, Scott, and Dale Holland.[3] It is from this judgment that appellant now appeals, setting forth the following assignment of error for review:
 THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE APPELLANT'S CHILDREN TO THE STATE AND TERMINATING HER PARENTAL RIGHTS.
Within her single assignment of error, appellant sets forth four issues for review which we will address individually. In her first issue, appellant contends that the trial court erred by granting permanent custody of her children to BCCSB and terminating her parental rights because she did not receive a proper summons informing her of the proceedings and was not properly advised of the consequences of her admissions during the adjudicatory hearing.
R.C. 2151.353(B) prohibits a trial court from making either a temporary or a permanent custody order unless the summons served on the child's parents explains that a permanent custody order would permanently divest the parents of their parental rights and that an adjudication by the court that a child is abused, neglected, or dependent could result in a temporary custody order which would cause the child to be removed from the parent's legal custody until the temporary order is terminated or a permanent custody order is made. The record indicates that a summons was served upon appellant and also filed with the trial court clerk on August 28, 1995. A review of the summons reveals that it contains the appropriate statutory language in accordance with the provisions of R.C. 2151.353(B). Therefore, we find that appellant received a proper summons informing her of the permanent custody proceedings and the required explanation of the consequences of such proceedings.
Juv.R. 29 contains the procedural requirements which a trial court must follow during the adjudication stage of permanent custody proceedings. Juv.R. 29(D) prohibits a court from accepting a party's admission of the allegations contained in a complaint unless the court personally addresses the party and determines the existence of both of the following factors:
 (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.
"In a case where parental rights are permanently terminated, it is of utmost importance that the parties fully understand their rights and that any waiver is made with full knowledge of those rights and the consequences which will follow." Elmer v. Lucas Cty. Children Services Bd. (1987), 36 Ohio App.3d 241, 245.
The standard for reviewing courts when determining whether a trial court complied with Juv.R. 29(D) is substantial, as opposed to strict, compliance. In re Christopher R. (1995), 101 Ohio App.3d 245,247-248; In re Jenkins (1995), 101 Ohio App.3d 177,180. The trial court is not required to recite the provisions of Juv.R. 29(D) verbatim. In the Matter of: John Beckert (Aug. 8, 1996), Cuyahoga App. No. 68893, unreported.
On January 10, 1996, the trial court held an adjudicatory hearing in order to determine whether Kara and Asia were abused, neglected, and dependent as alleged in the complaint filed by BCCSB on July 27, 1995. The record reveals that the adjudicatory hearing was uncontested and that appellant, who was represented by counsel, agreed that the allegations contained in the complaint were correct and true. The trial court addressed appellant personally at the hearing as demonstrated by the following colloquy:
 By the court: Is that your understanding Ms. Cornett?
 Ms. Cornett [appellant's counsel]: That's exactly my understanding.
 By the court: Okay. You (inaudible) understand what's going on today?
Unidentified female voice: Yes I do.
 By the court: And you understand if the court finds your children to be abused, neglected, dependent any of those three as has been outlined by the prosecution it would be Juvenile court that has the order to issue a disposition in this case in other words to determine whether or not first of all Children Services, as you are all aware, they're asking for permanent custody of your two children it would be . . . it would give this court the authority to make that decision obviously you'd have the right to have a hearing, in fact, we're scheduling one to present evidence in that regard but it would give this court the authority to make that decision. And also to issue any other orders if indeed that is not granted any other orders concerning your children's care and custody and control and anything that might be expected of you in that regard (inaudible) give this court that authority if there's a finding of abuse, neglect or dependency, understand that?
Ms. Fordyce [appellant]: Yes I do.
 By the court: Okay and you've talked this over with Ms. Cornett and you understand what's going on?
Ms. Fordyce: (inaudible).
 By the court: Okay. alright [sic]. We're not marking any evidence are we?
Mr. Sherron [prosecutor]: No your Honor.
 By the court: Okay. Based upon the stipulation then upon the record and the apparent agreement of the mother * * * we will make a finding at this time that Kara Fordyce is an abused, neglected and dependent child as defined under title 2151 of the revised code. We'll make a finding that Kara was . . . I 'wanna get the names right . . . that Kara was abused by Scott Fordyce, is that correct?
Ms. Cornett: That's correct.
 By the court: . . . and that Kara was neglected by her mother as . . . isn't this consistent with the finding in the criminal court?
Mr. Sherron: That's correct your Honor.
 By the court: . . . that . . . that Kara was neglected by her mother, Alicia Fordyce. That Asia Fordyce is a dependent and abused child. We will not make any . . . there's not . . . there was never any discussion as to perpetrator regarding Asia?
Ms. Cornett: No.
After carefully reviewing the record, we find that the trial court did not substantially comply with Juv.R. 29(D) during the adjudicatory hearing. While the trial court did address appellant personally regarding her admissions, the court failed to determine whether appellant's admissions were voluntary, failed to determine whether appellant understood the nature of the allegations against her, failed to determine whether appellant was aware of the consequences of her admissions, and failed to advise appellant that by entering an admission, she waived her right to challenge the witnesses and evidence against her, waived the right to introduce evidence at the adjudicatory hearing, and waived the right to remain silent if she chose to do so. See Juv.R. 29(D)(1) and (2).
Therefore, we find that the trial court erred when it accepted appellant's admissions of abuse, neglect, and dependency regarding her two children because it failed to substantially comply with the mandatory requirements of Juv.R. 29(D). In re: William Stephens (Aug. 24, 1992), Butler App. No. CA91-05-077, unreported. Because appellant was denied the procedural safeguards found in Juv.R. 29(D), her admissions at the adjudicatory hearing to allegations contained in the complaint involving the abuse, neglect, and dependency of her two children were invalid. In re Smith (1991), 77 Ohio App.3d 1, 16.
Accordingly, appellant's first issue presented for review is well-taken, and appellant's sole assignment of error is sustained. The trial court's finding of abuse, neglect, and dependency with respect to Kara and Asia Fordyce is reversed, appellant's admissions are vacated, and this cause is remanded to the trial court for further proceedings. See Jenkins,101 Ohio App.3d at 180. On remand, the trial court is instructed to set aside its previous order granting permanent custody of the children to BCCSB, to conduct another adjudicatory hearing, and to comply with the mandatory requirements outlined in Juv.R. 29(D) before advancing to the dispositional stage of the proceedings.
We are very reluctant to reverse the trial court's decision in this case given the facts and circumstances underlying BCCSB's removal of the children from appellant's care. However, in light of the serious consequences which appellant faces as a result of BCCSB's attempt to gain permanent custody of her children, we cannot ignore the trial court's complete disregard of the procedural requirements which must be followed in permanent custody proceedings.
Appellant's remaining issues presented for review involve the dispositional phase of the permanent custody proceedings below. In her second, third, and fourth issues, appellant contends that the trial court erred by granting permanent custody of her children to BCCSB and terminating her parental rights because the state failed to make a diligent and good faith effort at reunification; the court's order of permanent custody is against the weight of the evidence and not supported by the evidence; and the order granting permanent custody is invalid since it does not specifically describe the services provided by BCCSB to her family, explain why those services were not successful, and specify the specific statutory factors upon which the trial court's conclusions are based.
As discussed in connection with appellant's first issue presented for review, we find that appellant's admissions of the abuse, neglect, and dependency of her children were invalid as a result of the trial court's failure to substantially comply with the mandatory requirements of Juv.R. 29(D). In light of our resolution of appellant's first issue presented for review, we find it unnecessary to reach the three remaining issues presented by appellant. Accordingly, appellant's three remaining issues are rendered moot and are hereby overruled.
Judgment reversed and remanded for further proceedings consistent with this opinion.
YOUNG, P.J., and KOEHLER, J., concur.
[1] The record indicates that Kara's treating physician did not allow appellant to feed Kara during her hospitalization and had ordered only nurses to feed her so that the amount of food given and Kara's reaction to the food could be closely monitored.
[2] Apparently, appellant agreed that Kara was abused only by Scott and neglected by her and that Asia was dependent and abused by virtue of Kara's treatment.
[3] The record indicates that Scott is the biological father of Asia and Dale Holland is the biological father of Kara, despite Scott's belief during the first two months of Kara's life that he was her biological father.