OPINION
{¶ 1} Appellant, Karen Costlow, appeals the decision of the Madison County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor son, M.C., to the Madison County Department of Job and Family Services ("MCDJFS"). We affirm the decision of the juvenile court.
 {¶ 2} Appellant is the biological mother of three minor children. In March 2001, appellant's first child was removed from her care and placed in the permanent custody of the Union County Department of Job and Family Services after the child sustained significant physical injuries while under her care.
 {¶ 3} In 2002, appellant gave birth to her second child, who tested positive for cocaine at birth. At that time, Amber Conley, a caseworker for MCDJFS, filed a dependency complaint for appellant's daughter in the juvenile court and implemented a case plan. The case plan provided that appellant was to: (1) abstain from using drugs and alcohol; (2) obtain housing, employment, and counseling; and (3) complete a drug rehabilitation program. Appellant voluntarily withdrew from the required rehabilitation program, and failed to contact MCDJFS regarding any possible reunification with her daughter. In July 2002, MCDJFS filed a complaint seeking permanent custody of appellant's daughter. In January 2003, the juvenile court granted MCDJFS permanent custody of appellant's second child, citing appellant's failure to complete the required drug rehabilitation program, and appellant's abandonment of the child.
 {¶ 4} In July 2003, while on probation for various offenses, appellant tested positive for cocaine. At that time, appellant was pregnant with her third child, M.C. Appellant's probation officer notified Conley that appellant was pregnant and that appellant was to be incarcerated for a probation violation through the duration of her pregnancy. Appellant was later released to give birth to M.C., which took place on August 20, 2003. M.C., like appellant's second child, tested positive for cocaine at birth. Appellant did not know the identity of M.C.'s father because she had been prostituting at the time of his conception. As a result, MCDJFS filed a complaint alleging that M.C. was a dependent child, and requested that it be granted permanent custody of the child.
 {¶ 5} On January 7, 2004, at a hearing in which appellant failed to attend, it was revealed that although no case plan for reunification had been established prior to the date of the hearing, appellant had been entitled to four visitations. Conley testified that appellant was present at only the first of these visitations, failed to attend the following three visits, and did not attempt to contact or visit M.C. for at least 120 days prior to the hearing. Conley explained that the first visitation, which was appellant's first and only interaction with M.C. since his birth, lasted only 20 minutes because appellant was arrested for violating the terms of her probation.
 {¶ 6} On January 21, 2004, the juvenile court found M.C. to be dependent and granted temporary custody to MCDJFS, and on February 23, 2004, the court issued a decision granting permanent custody of M.C. to MCDJFS. The court found that there was clear and convincing evidence that it was in the best interest of the child to grant permanent custody of M.C. to MCDJFS. Appellant appeals the juvenile court's decision to grant permanent custody, raising the following assignment of error:
 {¶ 7} "The court erred in granting permanent custody of appellant's newborn child to the madison county department of job and family services, children services department pursuant to [R.C.] 2151.353(a)(4)."
 {¶ 8} Appellant argues that by failing to develop a case plan for reunification, MCDJFS failed to make a good faith effort to reunite appellant with her child. Further, appellant maintains that the trial court abused its discretion in granting permanent custody of M.C. to MCDJFS in the absence of such a case plan for reunification.
 {¶ 9} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. Santosky v. Kramer (1982), 455 U.S. 745,759, 102 S.Ct. 1388. An appellate court's review of a trial court's decision finding clear and convincing evidence is limited to whether sufficient credible evidence exists to support the trial court's determination. In re Starkey,150 Ohio App.3d 612, 617, 2002-Ohio-6892. A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In re Rodgers (2000), 138 Ohio App.3d 510, 520.
 {¶ 10} When a state agency seeks permanent custody of a dependent child, the trial court is required to determine, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency. R.C. 2151.414(B)(1). In making such a determination, the trial court must consider all relevant factors, including, but not limited to, the following factors enumerated in R.C. 2151.414(D):
 {¶ 11} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 12} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 13} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 14} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 15} "(5) Whether any of the factors in [R.C.2151.414(E)(7) to (11)] apply in relation to the parents and child."
 {¶ 16} Upon a thorough review of the record, we find that clear and convincing evidence supports the juvenile court's determination that it is in the best interest of M.C. that he be permanently placed in the custody of MCDJFS. Specifically, the court relied on R.C. 2151.414(D)(5), which provides that it is in the best interest of the child to grant permanent custody to the movant if any of the factors in R.C. 2151.414(E)(7) to (11) are applicable.
 {¶ 17} Pursuant to R.C. 2151.414(E)(10), if a parent abandons her child, it is in the child's best interest to be placed in the permanent custody of the movant. According to R.C. 2151.011(C), "a child is presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than 90 days, regardless of whether the parents resume contact with the child after that period of 90 days." It its decision, the juvenile court found that appellant had abandoned M.C. by failing to have any contact with him for more than 120 days prior to the date of the hearing.
 {¶ 18} Also, under R.C. 2151.414(E)(11), it is in the best interest of the child that he be placed in the permanent custody of the agency if the parent has previously had her parental rights involuntarily terminated with respect to a sibling of the child. In its decision, the juvenile court found that MCDJFS had previously been granted permanent custody of appellant's second child in January 2003.
 {¶ 19} In addition to the evidence specifically relied on by the trial court, the record provides further evidence that granting permanent custody to MCDJFS is in M.C.'s best interest. The record indicates that M.C. has bonded with his foster parents, who have custody of appellant's second child, and are in the process of adopting her. M.C.'s foster parents have expressed their desire to adopt him as well. Also, Conley testified that M.C. has bonded with his half-sister and another child that the foster parents have adopted. According to Conley, M.C. has no significant relationship with appellant, as the only contact between the two of them since his birth consisted of a brief 20-minute visit.
 {¶ 20} After considering this evidence, the juvenile court found that granting permanent custody to MCDJFS is in the best interest of M.C. We find that sufficient credible evidence supports the trial court's findings with respect to the best interest determination. Once a juvenile court does find by clear and convincing evidence that it is in the best interest of the child to grant permanent custody to the agency, R.C.2151.414(B)(2) provides that a court may grant permanent custody if, under R.C. 2151.414(E), the court determines by clear and convincing evidence that the child cannot or should not be placed with his parents.
 {¶ 21} According to R.C. 2151.414(E), a child cannot or should not be placed with his parents if "[t]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."
 {¶ 22} In its decision, the trial court found that M.C.'s father has never come forward, and that his identity is unknown. Also, the court found that appellant has demonstrated a lack of commitment toward M.C. by failing to regularly support, visit, or communicate with him when she was able to do so. Further, the court stated appellant has shown an unwillingness to provide an adequate permanent home for M.C.
 {¶ 23} In addition, R.C. 2151.414(E) provides that if a parent has abandoned her child or if the parent has had her parental rights involuntarily terminated with respect to a sibling of the child, the child cannot and should not be placed with the parent. The juvenile court found that because appellant had abandoned her child and because she previously had her parental rights involuntarily terminated with respect to her second child, M.C. cannot and should not be placed with appellant.
 {¶ 24} Upon a thorough review of the record, we find that sufficient credible evidence exists to support the trial court's determination that M.C. cannot and should not be placed with either parent. Further, we find that appellant's argument that R.C. 2151.414 required MCDJFS to make a "good faith effort" to reunite appellant with M.C. by implementing the required reunification plan to be without merit.
 {¶ 25} Once a child is determined to be abused, neglected, or dependent, R.C. 2151.353 provides a juvenile court with several alternatives for the disposition of the child. In re Smart
(1984), 21 Ohio App.3d 31, 34.
 {¶ 26} Under R.C. 2151.353(A)(4), a juvenile court may commit the child to the permanent custody of a public children services agency if the court determines in accordance with R.C.2151.414(D) that that the permanent commitment is in the best interest of the child, and in accordance with R.C. 2151.414(E) that the child cannot or should not be placed with either parent. Although a children services agency should make a good faith effort to reunite a dependent child with his biological parent, such a reunification plan is not required where it would be futile to implement one. In re Baby Boy Puckett (Apr. 15, 1996), Butler CA95-07-125; Elmer v. Lucas Cty. Children Serv.Bd. (1987), 36 Ohio App.3d 241, 244; Smart,21 Ohio App.3d at 35.
 {¶ 27} We agree with the state's position that MCDJFS was not required to develop a plan for reunification, because to do so would have been futile. The state does not dispute that MCDJFS failed to make a good faith effort to reunite M.C. with appellant. Conley testified at the January 2004 hearing that no reunification plan was developed because MCDJFS intended to seek permanent custody of M.C. immediately. MCDJFS did develop a case plan for reunification with respect to appellant's second child. Appellant wholly disregarded this case plan, and failed to cooperate with MCDJFS with regard to any possible reunification with her second child.
 {¶ 28} As of the date of the permanent custody hearing, appellant apparently had continued abusing drugs and had failed to demonstrate, in any manner, her ability to provide adequate parental care for M.C. The prior reunification case plan provided that appellant was to seek help for her drug addiction. After abandoning a rehabilitation program, appellant tested positive for cocaine during her pregnancy with M.C. Further, appellant committed several probation violations during and after her pregnancy, and as of the date of the permanent custody hearing, a warrant for her arrest was outstanding. We find sufficient evidence in the record to support the state's position that an attempt to reunify appellant with M.C. would have been futile, based on appellant's failure to cooperate with MCDJFS with respect to her second child and her inability to demonstrate her ability to provide adequate parental care for M.C.
 {¶ 29} In addition, we hold that the trial court did not err by not requiring a reunification plan to be filed and implemented. R.C. 2151.412 does not require that a court order a reunification plan when it makes a disposition pursuant to R.C.2151.353(A)(4). In re Baby Girl Baxter (1985),17 Ohio St.3d 229, 234.
 {¶ 30} Upon a thorough review of the record, we find that clear and convincing evidence supports the trial court's determination that it is in the best interest of M.C. to be permanently placed in the custody of MCDJFS, and that the child cannot and should not be placed with either parent. The trial court made findings related to the applicable statutory factors set forth in R.C. 2141.414(D) and (E), which are supported by the evidence. The trial court did not err by granting permanent custody of the child to MCDJFS. Appellant's assignment of error is overruled.
Judgment affirmed.
Powell and Walsh, JJ., concur.