OPINION
{¶ 1} Appellant, R.B., appeals a decision of the Juvenile Division of the Butler County *Page 2 
Court of Common Pleas involving custody and visitation rights to her daughter, S.S.
 {¶ 2} Appellant is the biological mother of S.S., who was born in 1994, and five other children. Appellant has a history of involvement with the Butler County Children Services Board which dates back to1989, when she was indicted for felony offenses involving use of a minor in nudity-oriented material. Numerous referrals were received both prior to and after S.S. was born involving filthy living conditions of the home, body lice on the children, and other problems. S.S. and her siblings were removed from the home, but were returned after appellant completed services provided by BCCSB.
 {¶ 3} A complaint was filed on January 11, 2002, alleging that the children were neglected and dependent. The children were removed from the home, and S.S. was placed in a foster home. On February 28, 2002, the court issued a decision that states that the parties agreed that the children are neglected and dependent.
 {¶ 4} The foster mother married while S.S. was in her home, and she and her husband filed a motion for legal custody of S.S. on June 11, 2004. A motion for permanent custody was filed by BCCSB on July 26, 2004. The biological father was unaware that he had a daughter until after the case was pending. His paternity was established by DNA testing, and he filed a motion for legal custody on September 30, 2004. The father filed a motion to dismiss the agency's permanent custody motion and the agency withdrew the motion on January 18, 2006.
 {¶ 5} A hearing was held on July 18, 2006 on the motions for legal custody filed by the foster parents and the father. Prior to the hearing, the parties negotiated an agreement and placed the terms of the agreement on the record. The magistrate found that the agreement was in the child's best interest and issued a written decision containing the terms of the agreement. Appellant filed objections to the magistrate's decision arguing that she did not agree to all of the terms in the decision. The trial court held a hearing on September 15, *Page 3 
2006 and overruled appellant's objections.
 {¶ 6} Appellant now appeals the trial court's decision, raising the following two assignments of error for our review:
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT VIOLATED MOTHER'S CONSTITUTIONAL AND PROCEDURAL DUE PROCESS RIGHTS WHEN IT AWARDED EXTENSIVE PARENTING TIME RIGHTS TO NON-PARENTS WITHOUT OBTAINING THE MOTHER'S KNOWING, INTELLIGENT, INFORMED AND VOLUNTARY CONSENT."
 {¶ 9} Assignment of Error No. 2:
 {¶ 10} "THE COURT'S PARENTING TIME ORDER IS NOT SUPPORTED BY SUFFICIENT EVIDENCE, IS NOT IN THE CHILD'S BEST INTERESTS AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} Appellant argues in her first assignment of error that her due process rights were violated because she did not expressly consent to the agreement, she did not state on the record that she agreed, nor did she sign a document to that effect, no Juv. R. 29 colloquy was conducted and no other evidence was taken by the court to support a best interest finding.
 {¶ 12} In her second assignment of error, she contends that the trial court's decision was not supported by sufficient evidence and is against the manifest weight of the evidence for the same reasons.
 {¶ 13} At the July 18, 2006 hearing before the magistrate, the attorney for BCCSB began by identifying the parties who were present in the courtroom for the record. These people included an employee of children services, the guardian ad litem, the child's attorney, the mother and her attorney, the father and his attorney, and the foster parents and their attorney. The BCCSB attorney then stated that the parties were there for a legal custody *Page 4 
hearing and that they had reached a lengthy agreement. She stated that the parties "sat around for the last three hours and specifically delineated the agreement * * *." The magistrate asked which party would like to read the agreement into the record and the guardian ad litem responded that she would, and "if I get anything wrong, I'm sure I'll be corrected." The magistrate responded, "Okay. I assume you would be."
 {¶ 14} The guardian ad litem then read the agreement into the record. At several points, the parties and their attorneys spoke to clarify certain points of the agreement. While very detailed and specific in its terms, the essence of the agreement was that the father received legal custody, the foster parents received visitation and the mother's supervised visitation of two hours a week remained unchanged.
 {¶ 15} At various points while the agreement was being read into the record, parties spoke up to reiterate, clarify or correct what the agreement delineated. When the agreement had been read into the record, the magistrate asked, "Is that everything?" There was a comment that was inaudible on the transcript, and then appellant's counsel stated, "[y]eah, but that's separate than this." When questioned, appellant's counsel stated that there was another issue separate and apart from the custody issues that she wanted to address with the court. Appellant's attorney then discussed changing the order that prohibited appellant's boyfriend from being around the children. The transcript indicates that an "unidentified female," presumably appellant, stated that the boyfriend was able to return home but had to move back again. The issue was then discussed between the magistrate and the parties.
 {¶ 16} After fully discussing the issue involving appellant's boyfriend, the magistrate asked, "Is there anything else?" The guardian ad litem responded there wasn't, and the court indicated that the notes regarding the agreement should go to the courtroom clerk and the entry would be typed immediately. Another matter was discussed and before concluding the hearing, the court again asked the parties if there was "anything else?" *Page 5 
 {¶ 17} Appellant later filed objections to the magistrate's decision and a hearing was held on the objections. Appellant, represented by new counsel, argued that she did not agree to all of the visitation rights that the foster parents were granted. Specifically, she stated that she did not object to the foster parents' visitation every other weekend, but did object to the grant of holiday time and the summer visitation schedule.
 {¶ 18} Counsel for the father reviewed the facts of the case with the court, and the events leading up to the agreement. She further stated that there were extensive negotiations and that she saw and heard appellant's attorney sit down and explain the proposed agreement to appellant. She further stated that appellant spent time talking to the father in the presence of the attorneys discussing how the proposed agreement was going to work. She stated that it was her understanding that appellant consented to the agreement between the parties. Counsel for the foster parents indicated that she agreed with the father's attorney and there were extensive conversations regarding the agreement.
 {¶ 19} Counsel for BCCSB agreed that there was significant time spent negotiating the agreement and that she believed appellant agreed to the terms that were read into the record. The guardian ad litem also indicated that appellant agreed to the agreement between the parties and indicated that she had asked counsel to correct her if she read some of the terms wrong, and that parties spoke up and clarified things where needed. She reiterated that appellant was present throughout the negotiations and met with her counsel regarding the terms. The attorney for the child concurred with the statements of counsel for the other parties. The trial court overruled appellant's objections.
 {¶ 20} Appellant argues that her due process rights were violated as she did not affirmatively and verbally consent on the record, and the trial court should have conducted a Juv.R. 29 colloquy to ensure that she was in agreement. However, other courts have determined that Juv.R. 34 and R.C. 2151.353 do not require a full Juv.R. 29 colloquy for *Page 6 
admissions on disposition. In re Lakes, 149 Ohio App.3d 128,2002-Ohio-3917; In re Terrence, 162 Ohio App.3d 229, 2005-Ohio-3600. Nonetheless, appellant argues that "fundamental due process requires that when a parent is waiving the fundamental right to care for and have custody of a child, the trial court must have a meaningful dialogue with that parent to be certain that the consent is truly voluntary." SeeElmer v. Lucas Cty. Children Serv. Bd. (1987), 36 Ohio App.3d 241, 245.
 {¶ 21} Two appellate courts have discussed the issue of whether a court is required to conduct a Juv. R. 29 colloquy or some type of inquiry with a parent in a dispositional hearing. In one case, the Second District found that a Juv.R. 29 colloquy was not required when a parent agreed to a grant of permanent custody of two of her children to a children services agency. In re Lakes, 149 Ohio App.3d 128,2002-Ohio-3917. The court found that the mother's admission that it was in her children's best interest to be placed permanently with the agency instead of remaining with the parent was only part of the evidence for the court to consider in making a best interest determination. Id. at ¶ 71.
 {¶ 22} In the second case, the Sixth District found that while Juv.R. 29 rights were not required by the statute, when a parent is waiving the fundamental right to care for and have custody of a child, fundamental due process requires that the court must have a meaningful dialogue with the parent to be certain that the consent is voluntary. In reTerrence, 162 Ohio App.3d 229, 2005-Ohio-3600.
 {¶ 23} Appellant argues that her due process rights were violated under Terrence and Elmer and the principle in Lakes does not apply as the court did not conduct a full hearing with other evidence. We find the case before us is different from the cases cited by appellant in several respects. *Page 7 
 {¶ 24} First, these cases all involved permanent custody.[1] This court has distinguished these two types of dispositions, as "significantly different." In re Cline (Oct. 4, 1999), Clinton App. No. CA98-11-023. Most notably, legal custody is not "as drastic a remedy as permanent custody as parents retain residual rights and have the opportunity to request the return of their children." In re D.J. Butler App. No. CA2005-10-423, 2006-Ohio-2248, ¶ 6. Accordingly, the two have different standards of review. Id.
 {¶ 25} Second, the facts of this case indicate that appellant consented to the agreement. She was present at the hearing with counsel. The guardian ad litem indicated that the parties were to correct her if the terms that she read into the record were not those agreed to and the court indicated that it expected the parties to do so. Several clarifications were made, and it was clear that the parties had the opportunity and ability to question and correct the terms. When asked by the court if "that was everything," appellant's own counsel answered affirmatively, and indicated that there was another matter she wished to discuss. Accordingly, we find that the facts indicate appellant consented to the agreement. See VanHoose v. VanHoose (Apr. 17, 2000), Champaign Co. App. No. 99 CA 18 (silence in court ratified attorney's representations about agreement); see, also, Morr v. Carr, (1969), 19 Ohio St.2d 24 (ratification of settlement may be implied from fact of client's inaction or apparent acquiescence in the settlement).
 {¶ 26} In addition, appellant has failed to establish any prejudice from the agreement. Before the agreement was reached, appellant had two hours of supervised visitation with the child a week. The agreement not only continued that visitation, but also provided that *Page 8 
additional visitation would be liberalized as agreed between the mother and father and the child's therapist. Appellant's argument at the objection hearing was that with such liberal visitation to the foster parents, there was little time left to increase her visitation. However, under the terms of the agreement, the father can agree to increased visitation on consultation with the therapist. Additionally, if the mother desires additional visitation and time becomes a factor, she may still petition the court for an order modifying visitation and the court can review the issue at that point.
 {¶ 27} Because the issue involved was a disposition, the court was not required to undergo a Juv.R. 29 colloquy, and the evidence indicates appellant consented to the agreement. In addition, because the case involves legal custody, not permanent custody, the considerations are different, and appellant still has the right to ask the court to modify visitation in the future. Accordingly, we find no error in the trial court's decision to affirm the magistrate's decision.
 {¶ 28} Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] In fact, Elmer involved a stipulation regarding dependency at the adjudicatory stage, in which Juv.R. 29 specifically applies by statute. Moreover, we note that appellant argues in her reply brief that BCCBS is incorrect when it attempted to distinguish Lakes on the basis that it involved permanent custody, not legal custody, because the case also involved a planned permanent living arrangement as to some of the children. However, a careful reading of the first paragraph ofLakes reveals the court's statement that the appeal only involves two of the children to whom the agency was granted permanent custody.Lakes at ¶ 1. *Page 1