DECISION AND JUDGMENT ENTRY
{¶ 1} Jaimie S., appellant and the mother of Erich L. ("Erich"), appeals the decision of the Lucas County Court of Common Pleas, Juvenile Division, which terminated her parental rights to Erich and granted permanent custody to appellee, the Lucas County Children Services Board ("LCCSB").
 {¶ 2} Erich was born to appellant and Jeremy L. on February 20, 2002. Although the trial court also terminated the father's rights to parent Erich, he is not a party to this appeal. On December 31, 2002, LCCSB filed an ex parte emergency shelter care motion seeking temporary custody of Erich L. The motion was granted, and on January 2, 2003, LCCSB filed a complaint in dependency. The same day, LCCSB was awarded temporary custody and Erich remained in shelter care, the court having found it necessary to protect him from immediate or threatened physical or emotional harm. At the adjudication hearing on February 13, 2003, appellant consented to a finding of dependency. She does not assert error on appeal with respect to the adjudication.
 {¶ 3} On November 25, 2003, a motion to extend temporary custody was filed. On December 24, 2003, that motion was granted. On February 25, 2004, LCCSB filed its motion for permanent custody of Erich. The guardian ad litem appointed for Erich filed a report and recommendations with the court. On September 14, 2004, the matter moved to disposition.
 {¶ 4} At the outset of disposition, appellant appeared with counsel, and the following exchange occurred:
 {¶ 5} "[Attorney for appellant]: Your Honor, after some serious discussions with my client during which her mother was present in support of her, my client * * * would like to put on the record that she at this point in time is prepared to relinquish her parental rights with respect to Eric * * * [sic] because at this point in time, she believes that that is in Eric's [sic] best interest under the circumstances.
 {¶ 6} "THE COURT: [Appellant], you heard what your attorney said?
 {¶ 7} "[APPELLANT]: Uhum.
 {¶ 8} "THE COURT: Do you understand what she said?
 {¶ 9} "[APPELLANT]: Yes, I do.
 {¶ 10} "THE COURT: And you're agreeing and consenting to giving up your child permanently?
 {¶ 11} "[APPELLANT]: Yes, I do.
 {¶ 12} "THE COURT: Okay. Do you understand by your consenting to this, you're waiving certain rights, you're giving up certain rights that you have; one of which is having the Agency prove its case against you by clear and convincing evidence? Are you waiving that right, are you giving that up?
 {¶ 13} "[APPELLANT]: Yes, I do.
 {¶ 14} "THE COURT: You're also giving up the right to remain silent, you giving that right up? [sic]
 {¶ 15} "[APPELLANT]: Yes, I do.
 {¶ 16} "THE COURT: I'm sorry, I didn't hear you.
 {¶ 17} "[APPELLANT]: Yes, I do.
 {¶ 18} "THE COURT: Okay. You're also giving up the right to putting evidence on and to refute anything that the Agency may be presenting, including the right to taking the witness stand in your own behalf, are you giving that up? [sic]
 {¶ 19} "[APPELLANT]: Yes, I do.
 {¶ 20} "THE COURT: Okay. And how old are you, ma'am?
 {¶ 21} "[APPELLANT]: I'm 26.
 {¶ 22} "THE COURT: 26. 26?
 {¶ 23} "[APPELLANT]: Uhum.
 {¶ 24} "THE COURT: Are you under any disability, are you under any influence of alcohol or drugs today?
 {¶ 25} "[APPELLANT]: No. No.
 {¶ 26} "THE COURT: The Court is going to find that you voluntarily and intelligently consented to this and therefore, would grant the motion of the Agency on your behalf. You're free to leave or you can stay, which ever you wish to do."
 {¶ 27} Appellant exited. Her appointed attorney remained throughout the proceedings, to "protect the record on her behalf."
 {¶ 28} In its journal entry, the court wrote that it "was advised that [appellant] did not wish to contest the allegations of the motion [for permanent custody] and stipulated and agreed that they were true."
 {¶ 29} Appellant raises the following assignment of error:
 {¶ 30} "The trial court's decision to award permanent custody to Lucas County Children Services Board was not supported by clear and convincing evidence that it was in the child's best interest to permanently terminate the parental rights of Appellant even though Appellant consented to the award of permanent custody."
 {¶ 31} When a parent appeals the termination of her parental rights, an appellate court will not disturb a ruling unless it is against the manifest weight of the evidence. Some competent, credible evidence must exist to support the essential statutory elements for a termination of parental rights. In re S. et al (1995), 102 Ohio App.3d 338, 344-345;Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 32} "Before any court may consider whether a child's best interests may be served by permanent removal from his or her family, there must be first a demonstration that the parents are `unfit.'" In re Stacey S.
(1999), 136 Ohio App.3d 503, 516, citing Quillon v. Walcott (1978),434 U.S. 246, 255. Parental unfitness is demonstrated by evidence sufficient to support findings pursuant to R.C. 2151.414. That statute provides that a parent's rights may not be terminated unless the court finds evidence that 1) the child, "* * * cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent," R.C. 2151.414(B)(2), and 2) that a grant of permanent custody of a child to a children's service agency is in the child's best interests. R.C. 2151.414(B)(1).
 {¶ 33} To establish the first prong, a court must determine by clear and convincing evidence that one of the sixteen statutory factors of R.C. 2151.414(E) exists. In appellant's case, the trial court found applicable the factors of R.C. 2151.414(E)(1) and (2). Those sections state in material part:
 {¶ 34} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 35} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *." R.C.2151.414(E)(1)-(2).
 {¶ 36} In determining the best interests of the child, a court must consider the statutory factors of R.C. 2151.414(D)(1)-(5):
 {¶ 37} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 38} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 39} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 40} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 41} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 42} We have previously held that R.C. 2151.414(D) does not require a juvenile court to express consideration of those factors in its judgment entry. In re Nicholas A., 6th Dist. No. L-04-1303, 2005-Ohio-2104, ¶ 23, citing In the Matter of: Shawn W. (Sept. 30, 1996), 6th Dist. No. L-95-267. To reiterate, as long as some competent credible evidence exists to support a conclusion that the trial court considered and applied those factors, its determination will not be disturbed on appeal.
 {¶ 43} The trial court's judgment entry states that appellant did not wish to contest the allegations of the motion and stipulated and agreed that they were true. Indeed, the trial court followed the procedure of Juv.R. 29(D) for accepting stipulations. However, appellant is correct that she did not at any point in the hearing specifically stipulate to the truth of the allegations contained in the motion for permanent custody. Appellant does admit that her consent to a termination of her parental rights does not require a determination of parental unfitness. She chose not to contest the truth of the allegations, or present evidence on her behalf, and the court was free to find that those allegations were supported by clear and convincing evidence. Further, appellant's consent to an award of permanent custody may be considered as an other relevant factor pursuant to R.C. 2151.414(E)(16).
 {¶ 44} We conclude that the trial court had clear and convincing evidence that a grant of permanent custody was in Erich's best interests. The GAL report indicated that appellant had voluntarily admitted herself for psychiatric hospitalization when she became afraid of physically harming Erich; she admitted to thoughts of suffocating Erich with a pillow and cutting the throats of two other young children in the home. She was then diagnosed with depression and borderline personality disorder. Shortly thereafter, a safety plan was instituted whereby Erich was to reside with his father and have no unsupervised contact with appellant. Appellant violated this safety plan by moving into the father's home and again residing with Erich. According to a case plan for Erich filed November 4, 2002, Erich was unable to crawl at ten months of age because appellant "reported she does not allow Erich to play on the floor of their home." The GAL report noted that while Erich and appellant lived in the father's home, the home lacked adequate plumbing and raw sewage had backed up into the basement; for a period of time the home had no gas service. In August 2003, at a reasonable efforts review hearing, the magistrate found that appellant had completed anger management classes, was seeing a psychiatrist, was taking prescribed medications, and was visiting Erich twice a week and taking parenting classes with him. However, the GAL reported that appellant admitted to the GAL that she had not taken her prescribed medication for her mental illness for the previous eight months. The GAL also reported that appellant had admitted to a history of "inviting inappropriate persons" to live in her home; in November 2003, appellant reported that one man "allegedly raped her and she stabbed him." At the time of disposition, appellant was pregnant with a child of a different alleged father. The GAL reported that appellant was residing with the second child's alleged father; appellant told the GAL that he had been diagnosed with bi-polar disorder. These incidents led the GAL to conclude that appellant was "inconsistent in demonstrating good judgment."
 {¶ 45} Erich had significant developmental delays; however, he made significant progress in foster care. The GAL report contained her recommendation that it was in Erich's best interest to be in the permanent custody of LCCSB and be placed for adoption. As of the September 2004 dispositional hearing, Erich had been in LCCSB's custody for 21 months. Regarding Erich's condition, appellant's caseworker testified at disposition that Erich had significant developmental delays in social, gross motor, fine motor and verbal functioning. The caseworker also stated that an adoptive home had been identified that is able to meet his special needs. Clear and convincing evidence was available at the time of disposition for the court's consideration of each of the R.C. 2151.414(D) factors, and it supports a finding that a grant of permanent custody is in Erich's best interests.
 {¶ 46} Appellant argues that the GAL report may not be properly considered because it was not submitted under oath pursuant to R.C.2151.414(C), and therefore, there is insufficient evidence on the issue of Erich's best interests. The GAL report was properly before the court for its consideration on this issue. Juv.R. 34, which governs disposition hearings, permits "evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence * * *." Juv.R. 34(B)(2). Further, the GAL was present at disposition; appellant voluntarily chose not to examine or challenge the GAL with respect to her recommendations.
 {¶ 47} Lastly, appellant cites In re Lakes, 149 Ohio App.3d 128,2002-Ohio-3917, for the proposition that although a parent may consent to a termination of parental rights, R.C. 2151.414 still requires clear and convincing evidence supporting a finding that it is in the child's best interests to do so. Although appellant is correct, In re Lakes does not alter our conclusion. In Lakes, the mother had orally consented to a grant of permanent custody at the disposition hearing; however, the colloquy regarding her consent was extremely brief. As with appellant, the mother subsequently had a change of heart. On appeal, the mother argued that the court was required to engage in a Juv.R. 29(B) colloquy before accepting her admission that a permanent custody award was in her child's best interests. The court held that the trial court was neither required to follow Juv.R. 29 in a dispositional hearing, nor was the court required to hold a colloquy akin to a Crim.R. 11(C) plea acceptance. The court did hold that additional evidence is required to determine whether permanent custody is in the child's best interests; the mother's admission was "but one more article of testimonial evidence" for the court to consider, in addition to other testimony and evidence. Id. at ¶ 71. However, the court found that the caseworker's testimony constituted sufficient evidence to support a finding that an award of permanent custody was in the child's best interests. Likewise, the evidence in the present case, although not entirely testimonial, constitutes clear and convincing evidence, properly before the court pursuant to Juv.R. 34, to support a finding that a permanent custody award was in Erich's best interests. Appellant's assignment of error is not welltaken.
 {¶ 48} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs to appellant. App.R. 24.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Skow, J., Parish, J., Concur.