DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the judgment of the Lucas County Court of Common Pleas, Juvenile Division, which awarded permanent custody of Isreal Y. to the Lucas County Children Services Board ("L.C.C.S.B.") on January 11, 2007. On appeal, appellant, child's natural father, raises the following sole assignment of error: *Page 2 
 {¶ 2} "By failing to comply with the requirements as set forth in Ohio Revised Code Sections 5103.15 and 5103.151 the trial court erred in approving appellant's permanent custody surrender."
 {¶ 3} On August 4, 2006, temporary custody was awarded to L.C.C.S.B. via ex parte order. On August 7, 2006, L.C.C.S.B. filed a complaint alleging dependency and seeking permanent custody, pursuant to R.C.2151.414. On September 29, 2006, appellant, his counsel, the child's mother, her counsel, counsel for L.C.C.S.B., and the guardian ad litem were present for an adjudication and disposition hearing. The parents stipulated to the facts set forth in the complaint and agreed to a finding of dependency. In pertinent part, the facts set forth were as follows: (1) mother had a history of irregular housing, anger management problems, marijuana use, criminal activity including domestic violence and disorderly conduct, and frequent incarcerations; (2) L.C.C.S.B. had initiated two other cases involving the child's half-siblings, resulting in an award of permanent custody to L.C.C.S.B. with respect to one of the children, and legal custody being awarded to the other child's father; (3) mother's whereabouts were unknown following the birth of this child, in June 2006, until she was incarcerated in July 2006; (4) mother had a history of domestic violence by appellant while pregnant with this child; and (5) appellant, who was on parole for a 1995 conviction of robbery, for which he received a sentence of five to 15 years in prison, was incarcerated in approximately June 2006, to serve one year of his sentence. Appellant was in custody at the time of the adjudication hearing. The child was found to be dependent based upon clear and *Page 3 
convincing evidence, and the matter was continued for disposition until December 19, 2006.
 {¶ 4} At the disposition hearing, appellant was present in court with his counsel, mother's counsel, counsel for L.C.C.S.B., and the guardian ad litem. Appellant agreed to an award of permanent custody to L.C.C.S.B., testimony was taken, and the juvenile court found that there was clear and convincing evidence to support findings under R.C.2151.414(E)(4), (11), (13) and (14) as to the mother, and under R.C.2151.414(E)(4), (13), (14), and (16) with respect to appellant. The juvenile court found that the child could not or should not be placed with a parent within a reasonable time and that permanent custody was in the child's best interest. In accordance with the factors set forth in R.C. 2151.414(D), the court found that the child was in need of a permanent placement, that such could not occur without an adoption, and that a plan towards adoption was in the child's best interest. The child's mother did not appeal the decision of the juvenile court.
 {¶ 5} On appeal, appellant argues in his sole assignment of error that the juvenile court failed to comply with the requirements set forth in R.C. 5103.15[1] and 5103.151[2] *Page 4 
when approving appellant's permanent custody surrender. In particular, appellant argues that the juvenile court approved the agreement for permanent surrender of his child without first determining that the agreement was being made voluntarily because the court "did not require the appellant to uniquely acknowledge each and every right that was being explained to him." Appellant asserts that while the record indicates he was occasionally acknowledging the court's inquiries, "it is apparent that at least once during the voir dire, the trial court became concerned that the appellant was not paying attention or hearing the questions." When the juvenile court was concerned that appellant was not listening or paying attention, appellant asserts that the court "should have stopped the *Page 5 
voir dire, repeated the questions and assured itself that the appellant, in fact, understood them and that his actions in signing the surrender were therefore, voluntary [sic] made."
 {¶ 6} This matter was a brought before the juvenile court on L.C.C.S.B.'s motion for permanent custody pursuant to R.C. 2151.414. The Ohio Supreme Court has long-recognized that R.C. 5103.15 "has no connection with the law with reference to Juvenile Courts, the statutes concerning which are Sections 2151.01 to 2151.54, inclusive, together with Sections 2151.55, 2151.99 and 2153.01 to 2153.17, inclusive, Revised Code." Kozak v. Lutheran Children's Aid Society (1955),164 Ohio St. 335, 340; and In Re Miller (1980), 61 Ohio St.2d 184, 189. See, alsoIn the Matter of: Ryan Gordon, 3d Dist. No. 5-04-22 and 5-04-23,2004-Ohio-5889, ¶ 12; and In Re Ross (Sept. 11, 1998), 2d Dist. No. 16582. However, with respect to admissions made in juvenile court, Juv.R. 29(D) provides that, prior to accepting an admission, the juvenile court must address the party personally and determine that the admission is made "voluntarily with understanding of the nature of the allegations and the consequences of the admission" and that the party "understands that by entering his admission he is waiving his rights to challenge the witnesses and evidence against him, to remain silent and to introduce evidence at the adjudicatory hearing." A statement that it would be in a child's best interest to grant permanent custody constitutes an "admission" for purposes of Juv.R. 29(D). In ReRoss, supra.
 {¶ 7} Because appellant waived his parental rights and admitted that it would be in his daughter's best interest to have permanent custody awarded to L.C.C.S.B., we agree *Page 6 
with appellant that his waiver and admission must have been made knowingly and voluntarily. See Elmer v. Lucas County Children ServicesBoard (Dec. 18, 1987), 6th Dist. No. L-87-158; and Juv.R. 29(D). As this court held in Elmer, "[i]n a case where parental rights are permanently terminated, it is of utmost importance that the parties fully understand their rights and that any waiver is made with full knowledge of those rights and the consequences which will follow." Although the agreement to permanent custody occurred during the disposition phase of this case, we nevertheless find that, in order to be accepted, an admission or waiver of rights must have been made knowingly and voluntarily.
 {¶ 8} With respect to the adjudicatory phase of the case, we find that the juvenile court complied with Juv.R. 29(D) when accepting appellant's agreement to a finding of dependency. At the disposition phase, the juvenile court was informed that it was appellant's intention to agree to an award of permanent custody to L.C.C.S.B., provided that the child's mother could get a last visit and take pictures of the baby. Appellant was sworn and the following colloquy occurred:
 {¶ 9} THE COURT: "Okay. And I understand from your lawyer that you are interested in agreeing to Lucas County Children Services' motion for permanent custody; is that correct?"
 {¶ 10} APPELLANT: "Yes."
 {¶ 11} THE COURT: "Now, Mr. [Y.], you don't have to agree to anything because you have certain constitutional rights. Your first right is to have an attorney *Page 7 
represent you every time you come to court on this matter. And Ms. Szozda will continue to represent you through the course of this proceeding today. And has she answered your questions for you?"
 {¶ 12} APPELLANT: "Yes."
 {¶ 13} THE COURT: "All right. Do you have any questions about the process?"
 {¶ 14} APPELLANT: "No."
 {¶ 15} THE COURT: "While I'm having a conversation with you about this matter today, if at any time you feel the need to talk to your lawyer, I'm going to ask that you stop and I'll give you time to talk to your lawyer. Will you do that for me?"
 {¶ 16} APPELLANT: "Yes."
 {¶ 17} THE COURT: "All right. And if you have any questions of me at any time, please stop and ask me the question. If I ask you something that you're not very clear on what I said or what I mean, please stop and I'll take time to make sure that you understand everything. Will you do that for me?"
 {¶ 18} APPELLANT: "Yes."
 {¶ 19} THE COURT: "Okay. Thank you. Now, you also have the right to have Lucas County Children Services Board prove by clear and convincing evidence their motion for permanent custody of your [daughter]. That would be done by Ms. Keeler calling witnesses, and your lawyer would have the opportunity to cross examine the witnesses. She would be submitting evidence for submission and questions, and Ms. Szozda would have the ability to question the admissibility of that evidence. She would *Page 8 
also have the right to provide a defense for you, call witnesses and present evidence as well. And you would have the right to testify if you wanted to testify but that wouldn't be a required right. You could also decide not to testify in this matter. Do you understand that?"
 {¶ 20} APPELLANT: "Yes."
 {¶ 21} THE COURT: "Okay. Now, I want you to understand that if you agree with Lucas County Children Services Board's motion for permanent custody, you're going to allow me to read the complaint, consider the additional testimony and make my finding accordingly without putting a defense on. Do you understand that?"
 {¶ 22} APPELLANT: "Yes."
 {¶ 23} THE COURT: "All right. Now, in the state — and I want to tell you this before I go any further. This has to be a very difficult decision for you to make. It has lots of ramifications and I commend you for putting your child's best interests before your own interests. I know this is very difficult for you to do. So we'll take the time to do this.
 {¶ 24} "I want you to understand that in the state of Ohio that with an award of permanent custody to Lucas County Children Services Board that means that you are basically going to give up all your rights as a parent with regard to [your daughter]. And that would include your right to visit [her], your right to have communications.
 {¶ 25} "* * * You would give up — no longer would you have a requirement to support your daughter, and you would give up the right to consent to the adoption. *Page 9 
 {¶ 26} "Now, I understand that you've had some — are you listening to me? Okay. Now, I understand that you've had some conversation with Lucas County Children Services Board to have your [daughter's] mother have a final visit and be able to take some pictures. Is that correct, Ms. Keeler?"
 {¶ 27} MS. KEELER: "Yes, Your Honor."
 {¶ 28} THE COURT: "Okay. So I wanted to put that on the record as well. Now, has anybody made any promises to get you to enter into this agreement today?
 {¶ 29} APPELLANT: "No."
 {¶ 30} THE COURT: "Pardon me?"
 {¶ 31} APPELLANT: "No."
 {¶ 32} THE COURT: "All right. Is anyone forcing you in any way to get you to enter into this agreement today?"
 {¶ 33} APPELLANT: "No."
 {¶ 34} THE COURT: "And I know you're in custody, but I still have to ask you if you are under the influence of any drugs or alcohol or any condition that would effect your ability to make this important decision today."
 {¶ 35} APPELLANT: "No."
 {¶ 36} THE COURT: "Do you have any questions for me at this time?"
 {¶ 37} APPELLANT: "No, ma'am."
 {¶ 38} THE COURT: "All right. And are you — and are you doing this because you feel this is in the best interest of your child?"
 {¶ 39} APPELLANT: "Yes." *Page 10 
 {¶ 40} Counsel additionally stated that appellant wanted his daughter to stay where she was, in the home where her half-sister was placed, but that appellant "knows that it's not 100 percent, but that's what he wants." Counsel for L.C.C.S.B. indicated that continued placement with her half-sister, with a desire for adoption, was the plan at that time.
 {¶ 41} A break was then taken to allow appellant to review the agreement form regarding permanent custody with his counsel. After consulting with counsel, appellant signed the agreement form. The form listed the rights appellant would be giving up, including the right to trial, to hear and question witnesses who testified against him, to call witnesses in his behalf, and to testify in his own behalf, or remain silent. The form also stated that agreement to an award of permanent custody meant that all of appellant's rights as a parent would end, including, but not limited to, the right to visitation, communication, support and the right to consent to the child's adoption, and that L.C.C.S.B. would have the right to place the child in any adoptive home or substitute care setting it found was in the child's best interest. The form further stated that appellant entered into the agreement with the advice of counsel, fully discussed his rights and the ramifications of his agreement, that he understood them all, and that he was entering the agreement freely and voluntarily, without threat of harm, promises, or while under the influence.
 {¶ 42} We find that the juvenile court thoroughly investigated and established that appellant knowingly and voluntarily waived his parental rights and admitted that *Page 11 
permanent custody was in his daughter's best interest. Based on appellant's waiver and admissions, and the evidence presented to the juvenile court regarding appellant's incarcerations, we find that the juvenile court did not abuse its discretion in determining that there was clear and convincing evidence that the statutory elements of R.C.2151.414(E) (4), (13), (14), and (16) existed in this case, and that it was in the child's best interest to have permanent custody awarded to L.C.C.S.B. Appellant's sole assignment of error is therefore found not well-taken.
 {¶ 43} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Arlene Singer, J. CONCUR.
[1] In pertinent part, R.C. 5103.15(B)(1), concerning "Public Welfare," states that "[s]ubject to * * * juvenile court approval, the parents, guardian, or other persons having custody of a child may enter into an agreement with a public children services agency or private child placing agency surrendering the child into the permanent custody of the agency." R.C. 5103.15(C) states:
"The agreements provided for in this section shall be in writing, on forms prescribed and furnished by the department, and may contain any proper and legal stipulations for proper care of the child, and may authorize the public children services agency or private child placing agency when such agreements are for permanent care and custody to appear in any proceeding for the legal adoption of the child, and consent to the child's adoption, as provided in section 3107.06 of the Revised Code. If an agreement for permanent care and custody of a child is executed, social and medical histories shall be completed in relation to the child in accordance with section 3107.09 of the Revised Code. The adoption order of the probate court judge made upon the consent shall be binding upon the child and the child's parents, guardian, or other person, as if those persons were personally in court and consented to the order, whether made party to the proceeding or not."
[2] Pertinent to the issue raised by appellant, R.C. 5103.151(B)(4) states:
"The juvenile court shall question the parent to determine that the parent understands the adoption process, the ramifications of entering into a voluntary permanent custody surrender agreement, each component of the form prescribed under division (A)(1) of section 3107.083 of the Revised Code, and that the child and adoptive parent may receive identifying information about the parent in accordance with section3107.47 of the Revised Code unless the parent checks the `no' space provided on the component of the form prescribed under division (A)(1)(b) of section 3107.083 of the Revised Code or has a denial of release form filed with the department of health under section 3107.46
of the Revised Code. The court also shall question the parent to determine that the parent enters into the permanent custody surrender agreement voluntarily and any decisions the parent makes in filling out the form prescribed under division (A)(1) of section 3107.083 of the Revised Code are made voluntarily." *Page 1