DECISION AND JUDGMENT ENTRY
{¶ 1} In this appeal from the Sandusky County Court of Common Pleas, Juvenile Division, we are asked to determine whether the trial court erred in terminating the parental rights of appellants, Antoinette B. and Paschal M., and awarding permanent custody of their son, Jordan M. to appellee, Sandusky County Job and Family Services. *Page 2 
 {¶ 2} It is undisputed that Jordan, born in 1992, was adjudicated a dependent/ neglected child and was in the temporary custody of appellee a number of times over the last several years. On June 11, 2007, appellee filed a motion for permanent custody of Jordan due to his parents' continued substance abuse and/or incarceration.
 {¶ 3} Because of the nature of this cause, we shall first set forth the law applicable to a case where a children services agency seeks permanent custody of a child.
 {¶ 4} Before a juvenile court can terminate parental rights and award permanent custody to a public or private children services agency, it must find that clear and convincing evidence supports both portions of the permanent custody test set forth in R.C. 2151.414(B)(1). In re:Christopher G, 6th Dist. No. L-06-1188, 2006-Ohio-6294, ¶ 14. Therefore, as pertinent to the instant case, the juvenile court would normally be required to first find that Jordan could not be placed with Antoinette or Paschal within a reasonable time or should not be placed with either appellant. R.C. 2151.414(B)(1)(a).
 {¶ 5} In reaching its determination of whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent, a court is guided by R.C. 2151.414(E). This statutory section sets forth 16 conditions that the court is required to employ in making its determination. The statute provides that if the trial court finds by clear and convincing evidence that any one of the 16 conditions exist, the court must enter the requisite finding. In re: R.H., 8th Dist. No. 84051, 2004-Ohio-5734, ¶ 11. *Page 3 
 {¶ 6} Generally, a juvenile court must then also determine that, pursuant to the factors set forth in R.C. 2151.414(D), clear and convincing evidence shows that permanent custody is in the best interest of the child. R.C. 2151.414(B)(1); In re William S. (1996),75 Ohio St.3d 95, 99. Clear and convincing evidence is that which will cause the trier of fact to develop a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 7} We will now turn to the facts relevant to the foregoing law. On October 1, 2007, the court below held a dispositional hearing on appellee's motion. At that hearing, Antoinette's attorney indicated that his client was willing to stipulate to certain evidence. This evidence included a stipulation that the conditions set forth in R.C.2151.414(B)(1)(a) and 2151.414(E)(1), (E)(2), (E)(9),(E)(12), and (E)(16) existed. Antoinette also stipulated that it would be in the best interest of Jordan to terminate her parental rights and award permanent custody to appellee. She further stipulated that, appellee, the Sandusky County Job and Family Services Agency, made reasonable efforts to reunify the family, that she was offered several services (specifically named at the hearing), that she was unsuccessful in completing all of those services, that Exhibits A and B could be entered into evidence, and that the juvenile court could make a finding based upon the stipulations.
 {¶ 8} The court then engaged in a colloquy with Antoinette. The court first inquired as to whether Antoinette discussed the stipulations and agreements that were to be entered into evidence with her attorney. Antoinette replied, "Yes sir." The court *Page 4 
asked whether Antoinette realized that if it accepted the stipulations and evidence, she would no longer have any rights to contact Jordan and would be relieved of any parental responsibility, financial or otherwise, for her child. She again answered, "Yes." The trial judge inquired as to whether she understood that the findings made by the court would be based solely upon the stipulations, and Antoinette replied, "Yes." Antoinette also stated that she heard the stipulations as they were read into the record, that the stipulations were accurate, and that she understood the stipulations.
 {¶ 9} Next, the juvenile judge and Antoinette had the following exchange:
 {¶ 10} "The Court: Okay. One of the primary issues of this case since day one has been your substance dependence. Alcohol and/or substances of abuse; is that correct?
 {¶ 11} "[Antoinette]: Yes, sir.
 {¶ 12} "The court: Okay. And, in fact, that involvement in the use of illegal substances has resulted in your incarceration in the Ohio Department of corrections on, it looks like the end of January 2007 for a two-year period?[1]
 {¶ 13} "[Antoinette]: End of March.
 {¶ 14} "* * *
 {¶ 15} "The court: Okay. Is it true in the stipulation that the services that were outlined by Ms. Haley were, in fact, provided for you and your son in this matter?
 {¶ 16} "[Antoinette]: Yes sir. *Page 5 
 {¶ 17} "The Court: Okay. Is it your belief and understanding that services that were to directly relate to the issue of your substance abuse have not been successful?
 {¶ 18} "[Antoinette]: The most part, no.
 {¶ 19} "The Court: Okay. Do you understand if I accept the stipulations that you will have no ability to challenge the those stipulations.
 {¶ 20} "[Antoinette]: Yes sir.
 {¶ 21} "The Court: do you consent to me making the finding of whether I should grant the motion or not based upon those stipulations?
 {¶ 22} "[Antoinette]: Yes sir.
 {¶ 23} "The Court: do you understand that it's very likely that I will grant the motion for permanent custody if I accept those stipulations?
 {¶ 24} "[Antoinette]: Yes sir.
 {¶ 25} "The Court: Okay. Have any of my questions caused you to have questions for your attorney?
 {¶ 26} "[Antoinette]: No.
 {¶ 27} "The Court: Okay. Is there anything that you would like to let me know concerning any of the questions you up to this point in time?
 {¶ 28} "[Antoinette]: No.
 {¶ 29} "The Court: Do you want me to accept these stipulations, make them legally binding upon you?
 {¶ 30} "[Antoinette]: Yes sir." *Page 6 
 {¶ 31} The trial court then directed its attention to Paschal. Paschal's attorney stated that his client agreed to the following stipulations: (1) that the conditions found in R.C. 2151.414(B)(1)(a) and 2151.414(E)(1), (E)(2), (E)(9), (and (E)(16) existed; (2) that Exhibit C, which is the copy of an indictment, dated July 27, 2007, charging Paschal with trafficking in heroin, a felony of the fourth degree, would be admitted into evidence; (3) that appellee made reasonable efforts to unify Pascal with his son; and (4) that appellee provided many services (specifically named in the hearing), including drug treatment, to Paschal.
 {¶ 32} After the trial court asked Paschal whether he had an opportunity to discuss the stipulations and the implications of the stipulations with his attorney, Paschal stated: "Okay. I just want them [appellee] to know that I don't want to give up, but they are not willing to give me no more chances. * * * I'm an addict. I have a disease and a sickness. And what I don't understand in my heart is how can they take my child away from me if I'm a sick man? It's just something I don't fully want to understand. I'm willing to keep continuing this fight. But without help, I can't do it. And they [appellee] do not want to help me no more." The court then informed Paschal that he did have a right to a dispositional hearing. In response, Paschal answered: "I don't want to get torn to ribbons. I don't want to get through all week of this [a hearing] and then get shot down. I don't want to go through it."
 {¶ 33} Nonetheless, after the trial judge indicated that he could not terminate Paschal's parental rights until he heard evidence or examined the stipulations, Paschal *Page 7 
responded: "It's all bad. I'm not going to win. I can't win. I can't. It's impossible. It's impossible for me to win. And the only reason I'm saying what I'm saying now is for the love of my son." The court asked Paschal if he needed a few minutes to compose himself. Paschal ignored the question and stated: "I can't, I'm not going to give him up that easy. I just can't. I can't do that. I can't do it. I'm not going to give up. You guys got to take him from me. I'm not going to give him to you, all right. I'm not going to give up. I can't."
 {¶ 34} At that point, Paschal's attorney asked for a recess so that he could talk to his client. The court granted the attorney's request. After the recess, Paschal's attorney told the court that his client was ready to move forward with the hearing. The judge then spoke to Paschal, telling him that he did not want Paschal to feel he would not have a chance of retaining custody of his son if he went to trial. The judge then explained that entering into the stipulations took away Paschal's right to challenge the evidence, right to present his own evidence, and all other rights that accrue during the course of a dispositional hearing. Paschal replied that he wanted to continue with the stipulations hearing "with what my lawyer wants me to do. I won't be able to handle it mentally, your honor, if — — I don't want to take that chance [at a full dispositional hearing]. I don't want to." The court then told Paschal that he did not want him to do what his attorney wanted him to do. Rather, Pascal should do what he wanted to do. Paschal replied that he would rather do the right thing, and that "I'm going to do the right thing."
 {¶ 35} The juvenile judge subsequently stated, in material part: *Page 8 
 {¶ 36} "And in order to * * * [make a determination based upon the stipulations] you have to do it voluntarily with knowledge of what your rights, what the alternatives are. * * *. If you're willing to have me accept those stipulations, you need to understand that you would be doing so voluntarily, with the assistance of counsel, and would understand that the implication of me accepting those stipulations is that, just like you, I'm hand-tied to make that decision based upon these things that are stipulated to and agreed to, presented to me here in the course of his hearing. Okay?" Paschal nodded his head indicating that he would accept the stipulations and answered that he was doing so voluntarily.
 {¶ 37} The court then discussed the efforts made by appellee to treat Paschal's substance abuse, the services provided by appellee to aid Paschal in treating his addiction, and the numerous times that Paschal has, despite treatment, relapsed. At this point, the court below asked Paschal if he anticipated that he would relapse in the future. Paschal replied that he would have relapses until the day he died. Later, the juvenile judge again asked Paschal whether he wanted the court to accept the stipulations as fact, and Paschal, by nodding his head, indicated "yes."
 {¶ 38} After these colloquies, the trial court, based upon the stipulations, the exhibits, and the report of Jordan's guardian ad litem, granted appellee's motion for permanent custody.
 {¶ 39} On that same date, October 7, 2007, the court below entered its judgment finding that Jordan could not be placed with either of his parents within a reasonable time *Page 9 
or should not be placed with either of his parents. The court predicated its decision on the existence of the stipulated conditions in R.C.2151.414(E), as separately applicable to each parent, and found that terminating Antoinette's and Paschal's parental rights was in the best interest of Jordan. In determining the best interest of Jordan, the court relied on the facts found in the guardian ad litem's report and discussed each of the factors listed in R.C. 2151.414(D). Based upon the foregoing, the juvenile court terminated the parties' parental rights and awarded permanent custody to appellee.
 {¶ 40} Antoinette appeals that judgment and sets forth the following assignment of error.
 {¶ 41} "The trial court erred to the prejudice of the appellant by failing to adequately examine the Appellant Mother on her ability and desire to enter into the Proposed Stipulations of Fact."
 {¶ 42} In her assignment of error, Antoinette maintains that, in entering into the stipulations in the juvenile court, she "was deprived of her Due Process and Confrontation rights as secured by Fifth and Sixth [Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution." She also complains that the trial court erred by not following Juv.R. 29(D) and determining thereunder that her consent to the stipulations was voluntary and understanding. In particular, Antoinette urges that the trial court knew that she was an "addict" and should therefore have determined that she was "sober" before allowing her to waive her constitutional right to raise her child. *Page 10 
 {¶ 43} Juv.R. 29 is captioned "Adjudicatory hearing" and requires the juvenile court to, inter alia, determine whether notice requirements were met, to inform the parties of the substance of the complaint, to inform unrepresented parties of their right to counsel, to appoint counsel and/or obtain a waiver of counsel. Thus, Juv.R. 29(D) governs the procedure to be followed if a party makes an admission at an adjudicatory hearing. The hearing in this cause was a dispositional hearing and is governed by Juv.R. 34 and R.C. 2151.353. Therefore, the court below was not required to adhere to the strictures of Juv.R. 29. See In re: Lakes, 149 Ohio App.3d 128, 2002-Ohio-3917, ¶ 60-71; In re:Terrence, 162 Ohio App.3d 229, 2005-Ohio-3600, ¶ 89. Further the court was not required to "engage in a colloquy akin to Crim.R. 11(C)." In re:Eric L., 6th Dist. No. L-04-1340, 2005-Ohio-2945, ¶ 47. Nevertheless, we have previously held:
 {¶ 44} "[Fundamental due process requires that when a parent is waiving the fundamental right to care for and have custody of a child, the trial court must have a meaningful dialogue with that parent to be certain that the consent is truly voluntary. See Elmer v. Lucas Cty.Children Serv. Bd, supra. If a parent expresses uncertainty or misunderstandings about his or her decision to waive parental rights, the trial court's acceptance of a waiver is improper. Id." In re:Terrence, supra, ¶ 89.
 {¶ 45} Applying this standard to the colloquy between the juvenile judge and Antoinette, we find that the lower court did engage in a meaningful dialogue with her, that she understood the consequences of the stipulations, and that she was voluntarily agreeing to the stipulations. There is no suggestion in the transcript of the dispositional *Page 11 
hearing that Antoinette was under the influence of any drug or alcohol. Therefore, we find Antoinette's sole assignment of error not well-taken.
 {¶ 46} Pascal also appeals the juvenile court's judgment and claims that the following error occurred in the proceedings below:
 {¶ 47} "The record does not reflect that appellant voluntarily and knowingly stipulated to facts set forth in the motion for permanent custody, and set forth as stipulated facts in the court's finding of permanent custody as required pursuant to Juvenile Rule 29(D), thereby violating appellant's due process rights."
 {¶ 48} The law that is applicable to Antoinette's assignment of error is also applicable to Paschal's assignment of error. Thus, we have reviewed the entire dialogue between Paschal and the trial court in order to determine whether Paschal's consent to the stipulations was knowing and voluntary. That review reveals that Paschal clearly had mixed feelings about the stipulations and about foregoing a full dispositional hearing. Paschal did, nonetheless, express understanding of the situation. That is, based upon his discussion with the juvenile court judge, he fully realized that by agreeing to the stipulations, his parental rights would, more than likely, be terminated. Moreover, and based upon our review, we conclude that Paschal did, in the end, do what he believed was the "right thing" for Jordan, i.e., he voluntarily decided to consent to the stipulations. Therefore, we find Paschal's assignment of error not well-taken.
 {¶ 49} The judgment of the Sandusky Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. *Page 12 
Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Sandusky County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J.
Mark L. Pietrykowski, P.J.
Arlene Singer, J. concur.
[1] This information was obtained from appellee's Exhibit A, a March 29, 2007 judgment of the Sandusky County Court of Common Pleas sentencing Antoinette to two years in prison on her conviction for attempted felonious assault. *Page 1