**In re K.H.**

[Cite as *In re K.H.*, 191 Ohio App.3d 251, 2010-Ohio-5172.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–10–020.

Decided Oct. 22, 2010.

252

Sarah A. Nation, for appellant Kristy H.

Mark E. Mulligan, Ottawa County Prosecuting Attorney, and Andrew M. Bigler, Assistant Prosecuting Attorney, for appellee, Ottawa County Department of Job and Family Services.

COSME, Judge.

{¶ 1} Appellant, Kristy H. ("the mother"), appeals the judgment of the Ottawa County Common Pleas Court, Juvenile Division, terminating her parental rights to the minor child, K.H. Because the juvenile court provided erroneous information to the mother regarding the state's burden of proof as to permanent-custody factors, we conclude that the mother's consent was not voluntarily or knowingly given. Therefore, the judgment of the juvenile court is reversed, and the cause is remanded.

## I.  BACKGROUND

{¶ 2} The events that led to this appeal began on December 30, 2008, when the Ottawa County Department of Job and Family Services ("the agency") received a referral regarding a family in need of services due to the mother's medication-related seizures. The report also included a claim that the mother had been abusing drugs and alcohol. Mother declined the agency's offer of counseling services, since she was already in the process of arranging services through her doctor.

{¶ 3} On January 14, 2009, the agency was informed that the mother's son, K.H., had started a fire in the mother's apartment. K.H., born in 2005, was about three and one-half years old at that time. The mother reported that she awoke to smoke in the apartment and left with her boyfriend without realizing that K.H. was still in the apartment. The boyfriend went back into the apartment to get K.H., who was unharmed. The agency offered "voluntary protective services" which the mother accepted, stating that "she needs all the help she can get."

{¶ 4} On January 17, 2009, the agency received a report that the mother had attempted suicide and had been hospitalized. The mother, in speaking with the agency caseworker, described K.H. as "mother fucker," explaining that K.H. "doesn't listen," is "very hard to handle," and "has a lot of energy."

{¶ 5} On January 20, 2009, the agency filed a motion for ex parte shelter care, alleging K.H. to be a neglected and dependent child. The juvenile court granted emergency temporary custody of K.H. to the agency that day. A shelter hearing was held the next day. The juvenile court heard from the agency caseworker, who expressed her concerns about the mother's ability to care for the child as well as her mental condition based on the recent events. The juvenile court continued temporary custody of K.H. with the agency.

{¶ 6} On March 13, 2009, the juvenile court held an adjudication hearing on the dependency and neglect complaint. In exchange for the state's dismissal of the neglect allegations, the mother, who was represented by counsel, admitted that K.H. was a dependent child and that he lacked the proper care or support as a result of her mental condition. The agency caseworker testified briefly about the agency's contacts with mother and the reasons why the mother was allegedly unable to care for K.H.

{¶ 7} In support of temporary custody to the agency, the caseworker noted that K.H.'s grandmother was unable to care for K.H. and another relative had declined custody. The caseworker further said that she was unable to locate K.H.'s biological father. The caseworker acknowledged that the mother had been offered a case plan and that she was working diligently to comply with the

case plan, which included diagnostic assessment, counseling, drug and alcohol assessment, and random drug screens. Nevertheless, she was still unable to provide the child with the necessary proper care.

{¶ 8} The juvenile court determined that the mother knowingly, voluntarily, and intelligently waived her rights and admitted to the allegations of dependency in the amended complaint. The juvenile court further found that as to the mother, there was clear and convincing evidence that K.H. is a dependent child. The juvenile court approved the state's request to amend the complaint, dismissing the allegation of neglect. The juvenile court continued the matter of adjudication as it related to the father until service could be made and also continued disposition in regard to the child as to both parents.

{¶ 9} On April 3, 2009, a hearing was held as to the adjudication of K.H.'s alleged biological father, R.M., and the disposition in regard to the child. The agency caseworker testified that she had eventually located R.M., who was incarcerated. Consequently, he could not be considered as a suitable caregiver for K.H. The juvenile court then found, as to R.M., that clear and convincing evidence was presented to demonstrate that K.H. is a dependent child since R.M. had failed to provide proper care or support. The juvenile court also found that the agency had made reasonable efforts to prevent K.H.'s removal from the care of his parents.

{¶ 10} Concerning the disposition as to both parents, the court approved an agreement between the parties, which provided that K.H. would remain in the temporary custody of the agency subject to the mother's participation in the case plan. According to the agreement, the mother would have supervised visitation with the child at the agency to be scheduled at agreed times.

{¶ 11} On December 22, 2009, the agency filed its motion for permanent custody of K.H. Following delays attributable to discovery, a hearing on the motion was held on March 31, 2010. At the outset of the hearing, evidence was presented that paternity test results showed that R.M. is not K.H.'s biological father. Service was then made on John Doe, the unknown biological father of K.H., by posting in accordance with the Rules of Civil Procedure and local court rules. The mother indicated that she was voluntarily relinquishing permanent custody of K.H. The mother's counsel then informed the court of mother's hospitalization and treatment for her mental condition and a pending competency examination related to her defense of a current felony charge. Counsel stated that despite those circumstances, the mother fully understood the consequences of her decision to permanently surrender K.H. to the agency and believed it to be in the best interest of the child.

{¶ 12} The juvenile court then explained to the mother that without her consent to surrender K.H., the state would have had to demonstrate by clear and

convincing evidence that K.H. "has been in the temporary custody of [the agency] for twelve or more months out of a consecutive twenty-two month period; or that diligent case planning was provided, that was not satisfactorily completed; and finally, that it is in the best interests of [K.H.] that your parental rights be terminated." The juvenile court further explained that mother's counsel could have cross-examined the state's witnesses, mother could have taken the stand, and mother could have called witnesses.

{¶ 13} The juvenile court again emphasized that the state would have the burden of proving by clear and convincing evidence the "12 out of 22" criterion and that "it is in the best interest of [K.H.] that parental rights be terminated," noting that "by surrendering your parental rights * * * you have given up your right to have this matter proven by clear and convincing evidence." The juvenile court also spoke with the mother, eliciting her confirmation that she was not under the influence of alcohol or drugs, including prescription medication that might prevent her from making a rational decision.

{¶ 14} The guardian ad litem appointed to represent the mother stated that he had spoken with her at length and believed that she understood the ramifications of her decision and its finality. The guardian ad litem appointed to represent K.H. opined that it was in the child's best interest that permanent custody be granted to the agency.

{¶ 15} In addition, the Court-Appointed Special Advocate ("CASA") for K.H. stated that it would be in the child's best interest that permanent custody be granted to the agency. Finally, another agency caseworker familiar with the file also testified that reasonable efforts had been made to reunite the mother with the child and that it was in the child's best interest that permanent custody be granted to the agency.

{¶ 16} Based on the evidence before it, the juvenile court terminated the mother's parental rights and granted permanent custody of K.H. to the agency. The mother now appeals from that judgment.

## II. COMPLIANCE WITH STATUTORY NOTICE

{¶ 17} We will address the mother's assignments out of order. In her third assignment of error, the mother contends:

{¶ 18} "The trial court erred in that it failed to provide appellant with the notice of hearing in compliance with statute."

{¶ 19} We disagree.

{¶ 20} When an agency files a motion to modify a temporary-custody order to permanent custody, notice of that motion must be served in accordance with R.C. 2151.414 and 2151.29. R.C. 2151.414(A)(1) states:

{¶ 21} "Upon the filing of a motion * * * for permanent custody of a child, the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action and to the child's guardian ad litem."

{¶ 22} R.C. 2151.29 requires:

{¶ 23} "Service of summons, notices, and subpoenas * * * shall be made by delivering a copy to the person summoned, notified, or subpoenaed, or by leaving a copy at the person's usual place of residence. If the juvenile judge is satisfied that such service is impracticable, the juvenile judge may order service by registered or certified mail."

{¶ 24} When the residence of a party is unknown, service by publication is permissible. Juv.R. 16(A); Civ.R. 4.4(A). In order to obtain such service, the affidavit of a party must state that the residence is unknown and cannot be ascertained with reasonable diligence. Juv.R. 16(A); Civ.R. 4.4(A). See *In re Mullenax* (1996), 108 Ohio App.3d 271, 274, 670 N.E.2d 551.

{¶ 25} Juv.R. 18(D) states that a notice of hearing shall be served no later than seven days prior to a hearing. The jurisdiction of the juvenile court does not attach until notice of the proceedings has been provided to the parties. *In re Miller* (1986), 33 Ohio App.3d 224, 225–226, 515 N.E.2d 635.

{¶ 26} In this case, the return of service filed with the court reflects that the mother was served with the summons on January 5, 2010, well before the March 31, 2010 hearing date. In addition, the mother did not raise any issue of notice in the trial court and appeared with counsel at the hearing. Therefore, we conclude that the service on the mother was proper and in compliance with the statutory requirements.

{¶ 27} The mother also argues that service on K.H.'s putative biological father was defective because the agency failed to exercise reasonable diligence in locating him. The mother argues that in another custody case involving her other child, the agency failed to locate that child's father when provided with residence information. By inference, the mother claims that the agency failed to exercise reasonable diligence in trying to find K.H.'s father. This argument is without merit.

{¶ 28} Once a challenge to a party's exercise of reasonable diligence occurs, that party must support its claim of the exercise of reasonable diligence. *In re Miller*, 33 Ohio App.3d at 226, 515 N.E.2d 635. It has been held that "[m]inimal

efforts do not constitute 'reasonable diligence'; rather, it is demonstrated by such diligence, care, or attention as might be expected from a person of ordinary prudence and activity." *In re Cowling* (1991), 72 Ohio App.3d 499, 502, 595 N.E.2d 470. See *In re Mullenax*, 108 Ohio App.3d at 274, 670 N.E.2d 551.

{¶ 29} In this case, the agency first served R.M., the person named by appellant as K.H.'s father. After it was determined that R.M. was not K.H.'s biological father, the agency then effected service upon the unknown father by publication, pursuant to Juv.R. 16(A). The mother provided no other information pertaining to the identity of the father. Moreover, the mother did not dispute the agency's assertion at trial that the father was unknown. Without more information, the agency's ability to locate a putative father among the general population was severely limited. Nothing in the record indicates that the agency was dilatory in its efforts to locate the actual father of K.H. Therefore, we cannot say that the agency failed to exercise due diligence to identify K.H.'s biological father.

{¶ 30} Accordingly, the mother's third assignment of error is not well taken.

### III. CONSENT WAS NOT KNOWINGLY GIVEN

{¶ 31} In her first assignment of error, the mother maintains:

{¶ 32} "The trial court erred in accepting appellant's permanent surrender of her child where it improperly advised appellant what the state was required to prove at trial."

{¶ 33} The mother asserts that the juvenile court erred by informing her that the state would have to prove facts under R.C. 2151.414(B)(1)(d), which requires that "[t]he child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period * * *." She argues that since this factor was not applicable and because the juvenile court failed to inform her of the state's burden of proof as to any of the other R.C. 2151.414(B)(1) factors in support of a grant of permanent custody of the child, she was not afforded any "procedural and substantive" protection.

{¶ 34} We agree.

{¶ 35} A juvenile court may grant permanent custody of a child to a public services agency if the court finds, by clear and convincing evidence, two statutory prongs: (1) the existence of at least one of the four factors enumerated in R.C. 2151.414(B)(1)(a) through (d) and (2) that the child's best interest is served by a grant of permanent custody to the children's services agency. R.C. 2151.414(B)(1). *In re M.B.*, 10th Dist. No. 04AP755, 2005-Ohio-986, 2005 WL 534904, ¶ 6. Clear and convincing evidence requires "that measure or degree of

proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 36} Under the first prong, a juvenile court must find at least one of the following four factors under R.C. 2151.414(B)(1):

{¶ 37} "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 38} "(b) The child is abandoned.

{¶ 39} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

{¶ 40} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *."

{¶ 41} Juv.R. 19 provides, "An application to the court for an order shall be by motion. * * * It shall state with particularity the grounds upon which it is made * * *." A motion for permanent custody must allege grounds that exist at the time the motion is filed. *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 24, 26. Consequently, at the time a public children-services agency or private child-placing agency moves "for permanent custody of a child on R.C. 2151.414(B)(1)(d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22–month period." Id. at the syllabus.

{¶ 42} An agency is not precluded, however, from moving for permanent custody before a child has been in the agency's temporary custody for at least 22 consecutive months. If a ground other than R.C. 2151.414(B)(1)(d) exists to support a grant of permanent custody, the agency may move for permanent custody on that ground. Id. at ¶ 27.

{¶ 43} In this case, the agency's motion for permanent custody was premised generally on R.C. 2151.414(B)(1), but did not specify which of that section's four factors was applicable. The motion did include language that reflects R.C. 2151.414(B)(1)(a), that the child cannot or should not be placed with the mother within a reasonable amount of time. The motion did not indicate that the "12 out of 22" provision applied. In fact, during testimony presented at the hearing, counsel for the agency specifically informed the court that the permanent custody motion was not based upon the "12 out of 22" provision, since, at the time the

motion was filed, K.H. had not been in agency custody for the requisite time period. Rather, counsel stated that "the reason for the filing was not on the 12 out of 22, but that despite the case plan efforts testified to by [the caseworker] that the child could not be placed within a reasonable amount of time, so her statement is true, that we have had temporary custody for 12 out of 22 months, but not as statutorily defined for purposes of her testimony."

{¶ 44} Despite this acknowledgement and the undisputed fact that K.H. had not been in custody for the required 12 out of 22 months, however, in its dialogue with mother, the juvenile court identified R.C. 2151.414(B)(1)(d) as the factor that the agency would need to prove in order to be granted permanent custody of K.H. Therefore, since the actual grounds were based upon R.C. 2151.414(B)(1)(a), we must determine whether the mother's consent was valid within the context of the evidence presented in the record.

{¶ 45} The rights to conceive and to raise one's children have been deemed essential, one of the basic civil rights of man, and far more precious than property rights. *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551. "A termination of parental rights is the family law equivalent of the death penalty in a criminal case. The parties to such an action must be afforded every procedural and substantive protection the law allows." *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45. Although consent is not required for a termination of a parent's parental rights pursuant to R.C. 2151.414, "it is of utmost importance that the parties fully understand their rights and that any waiver is made with full knowledge of those rights and the consequences which will follow." *Elmer v. Lucas Cty. Children Serv. Bd.* (1987), 36 Ohio App.3d 241, 245, 523 N.E.2d 540. When determining whether a waiver was valid, a reviewing court should take into consideration the whole record. Id.

{¶ 46} As we have previously acknowledged, Juv.R. 34, which governs procedures for dispositional hearings, does not specifically require a full colloquy, as required by Juv.R. 29, for admissions on disposition. See *In re Erich L.*, 6th Dist. No. L–04–1340, 2005-Ohio-2945, 2005 WL 1389086, ¶ 46–47; *In re Lakes*, 149 Ohio App.3d 128, 2002-Ohio-3917, 776 N.E.2d 510, ¶ 34. Nevertheless, basic due process requires that when a parent is waiving the fundamental right to care for and have custody of a child, the trial court must have a meaningful dialogue with that parent to be certain that the consent is truly voluntary and knowing. See *Elmer*, supra; *In re Terrence*, 162 Ohio App.3d 229, 2005-Ohio-3600, 833 N.E.2d 306, ¶ 89. See also *In re Isreal Y.*, 6th Dist. No. L–07–1030, 2007-Ohio-3685, 2007 WL 2070206, ¶ 7 (admissions or a waiver of rights entered during the disposition phase of a permanent-custody case must also be knowingly and voluntarily made). Moreover, the waiver of one's parental rights "should not be

based upon misunderstandings, duress, coercion, or the lack of zealous legal representation." *In re Terrence* at ¶ 92.

{¶ 47} In this case, the juvenile court did not correctly delineate the specific grounds and allegations that formed the basis for the permanent-custody motion. Rather, despite facts to the contrary, the juvenile court still indicated only that the agency had to prove the "12 out of 22 months" provision. In addition, the juvenile court incorrectly stated that one of the factors necessary was the mother's compliance with the case plan. Noncompliance with a case plan is not one of the four factors enumerated in R.C. 2151.414(B)(1)(a) through (d), but is a factor that may be considered under the second prong, R.C. 2151.414(D), the best interests of the child.

{¶ 48} Although the mother was present at the hearing with counsel and her guardian ad litem who both indicated that the mother fully understood what she was doing and the rights she was giving up, the nature of the allegations was unclear. Thus, when considering the state's initial failure to identify the specific basis of permanent custody, the juvenile court's erroneous statements of the state's burden of proof, together with mother's physical and mental issues, the validity of the mother's consent is questionable at best. Although the mother may have understood that she was waiving certain general rights to challenge witnesses and evidence, she was not provided with vital information as to the specific nature of the allegations and the agency's burden of proof regarding facts necessary to establish a finding under R.C. 2151.414(B)(1)(a).

{¶ 49} Therefore, we conclude that the trial court's erroneous statement and omission of the correct grounds for the motion concerning the state's burden of proof did not provide the necessary due-process protection. The mother's consent was not knowingly and voluntarily made.

{¶ 50} Accordingly, the mother's first assignment of error is well taken.

## IV. BEST INTEREST OF THE CHILD

{¶ 51} In her second assignment of error, the mother maintains:

{¶ 52} "The trial court erred in awarding permanent custody of K.H. to OCDJFS where there was not clear and convincing evidence that said award was in the best interest of K.H. and where there was not clear and convincing evidence that the child could not be placed with either of the child's parents within a reasonable time."

{¶ 53} The mother asserts that the testimony of the caseworker was "perfunctory" regarding the first prong under R.C. 2151.414(B)(1) that K.H. could not be placed with her parents within a reasonable time and the second prong under R.C. 2151.414(B)(1) that termination of her parental rights was in the best

interest of K.H. The mother argues that this testimony was not adequate to establish clear and convincing evidence in support of the trial court's grant of permanent custody to the agency.

{¶ 54} In a permanent-custody proceeding, at the dispositional stage, other evidence beyond the admission of the parent is required to determine whether a particular placement is in the child's best interest. See *In re Janway* (Dec. 13, 2000), 2d Dist. No. 18264, 2000 WL 1838301. The parent's admission is just one factor for the court to consider. *In re Lakes*, 149 Ohio App.3d 128, 2002-Ohio-3917, 776 N.E.2d 510, ¶ 71.

{¶ 55} In this case, the testimony of the caseworker present at the hearing for permanent custody was abbreviated, in part, because the original caseworker was unavailable, but more importantly, because the mother had consented to the voluntary termination of her parental rights. Consequently, in light of our discussion and disposition of the mother's first assignment of error concluding that the mother's consent was invalid, we must infer that the remainder of the proceedings was also prejudicially tainted.

{¶ 56} The mother's waiver of rights should not have, but may have, affected the agency's presentation of evidence to support its motion. Since, on remand, the agency will have the opportunity to present additional clear and convincing evidence to establish both the R.C. 2151.414(B)(1)(a) factor as well as the best-interest factor, we decline to comment further on the evidence presented.

{¶ 57} Accordingly, the mother's second assignment of error is moot.

## V. CONCLUSION

{¶ 58} We conclude that the mother was not afforded fundamental due-process rights since the juvenile court gave her prejudicially inaccurate information as to the agency's burden of proof and her rights to challenge the motion for permanent custody.

{¶ 59} The judgment of the Ottawa County Common Pleas Court, Juvenile Division, is reversed and remanded for proceedings consistent with this decision.

Judgment reversed
and cause remanded.

HANDWORK and PIETRYKOWSKI, JJ., concur.